In re GRANITE LUMBER COMPANY, Debtor.

Bankruptcy No. 280–00023.

United States Bankruptcy Court, D. Montana.

July 25, 1986.

Granite Co. Treasurer, c/o J. Allen Bradshaw, Granite Co. Atty., Philipsburg, Mont., for County.

Tommy H. Butler, Staff Atty., Helena, Mont., for Dept. of State Lands.

Harold V. Dye, Missoula, Mont., Trustee.

Ralph B. Kirscher, Missoula, Mont., for Willis E. Campbell.

## ORDER FOR DISTRIBUTION OF FUNDS

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 proceeding, the Trustee requests an order in accordance with his proposal for distribution of funds on hand. Objections to the Trustee's proposal were filed by Old National Bank and its subrogee Willis E. Campbell (ONB). Hearing on the matter was held on July 8, 1986.

By prior orders of this Court, the real and personal property of the Debtor was sold at public and private sales, which generated gross proceeds of $144,750.00. An interim distribution of $50,000.00 was made to ONB, and the balance of funds were placed in interest bearing accounts which produced income of $55,017.10. Expenses of administration incurred by the estate for Trustee's fee ($2,877.67), costs of litigation, bonds and title insurance ($8,395.06), post-petition real estate taxes ($993.18), accountant's fees ($4,162.50) and attorneys fees ($16,120.00), total $32,548.41. An estimated $500.00 to file a final estate income tax return will yet be required.

ONB is a secured creditor, holding a first mortgage lien on all real and personal property of the Debtor, (filed October 23, 1973), in the sum of $491,913.93. Thus, it is undersecured. Granite County, a political subdivision of the State of Montana, holds a tax lien against the property in the princi-

pal sum of $65,069.56. Lu Ann Courtney holds a wage claim earned within 45 days of bankruptcy in the sum of $265.70. Other taxing authorities are owed the following sums for taxes incurred by the Debtor after the ONB mortgage, to-wit:

| | |
|---|---|
| Montana Department of Revenue | —$32,068.52—Warrant 3/30/79 and Judgment 9/5/78 |
| Montana Employment Security Division | —$5,744.11—Certificate 2/16/79 |
| Internal Revenue Service | —$31,472.41—Notices filed 2/4/76 and 8/3/78 |
| Montana Department of State Lands | —$ 4,036.69 [1] —Judgment 10/23/78 |

All other creditors are unsecured. It is therefore apparent that the sale of the assets did not produce sufficient funds to pay the secured and priority creditors. This situation has given rise to the present controversy regarding distribution of the funds.

All parties argue the funds should be distributed in accordance with Section 724 of the Code. Under the Trustee's proposal, Granite County and all taxing authorities would share pro-rata in the super priority tax fund, after payment of expenses of administration, with the balance to ONB. Under such proposal the Granite County tax lien of $65,069.56 would be divided pro-rata among the taxing authorities in accordance with Section 507(a)(7) of the Code, leaving the balance on hand from the principal of $31,890.44 to be paid to ONB. Under ONB's contentions, the tax fund created by the Granite County lien would be paid before the ONB claim, but deducted from that tax fund would be all expenses of administration and the wage claim of $265.70, with the balance of $51,526.19 to ONB (which acknowledged the interim payment of $50,000.00 principal), together with

all interest earned on the account during the course of the bankruptcy petition. ONB does not object to payment of the tax authorities on a pro-rata basis as long as the moneys are paid from the Granite County tax claim fund.

In a case where the proceeds of sale are insufficient to satisfy all valid liens held against the property, Section 724 governs distribution. In analyzing distribution under that Code section, the Circuit Court of Appeals for the District of Columbia Circuit in the case of *Pearlstein v. U. S. Small Business Administration,* 719 F.2d 1169 (D.C.Cir.1983), held: (*Id.* at 1175–1176):

"In 1978, Congress again substantially revised the bankruptcy law. It made many substantive changes and also rearranged and reorganized numerous provisions. Once again, however, it did not change the settled rule that the relative priority among valid liens was to be determined by nonbankruptcy law. Section 724(b) subordinates tax liens to certain prior claims, and sets forth in detail the order of distribution to all claimants against property in an estate (or its proceeds) that is subject to a tax lien.

\* \* \* \* \* \*

The statute does not define whether a lien 'is senior to such tax lien' [subsection (1) ] or 'is junior to such tax lien' [subsection (4) ], or states upon what basis the determination of those priorities shall be made. There is no indication that when Congress in Section 724(b) restructed and restated the provisions covering the distribution of property in the estate that was subject to tax liens, it intended to change prior settled law and practice that the relative priorities of liens in bankruptcy (including tax liens subordinated by Section 67(c)(3) of the Chandler Act) were to be determined according to the nonbankruptcy lien law, or to create a new federal rule governing relative priority between tax and other liens. If Congress had intended to make such a

**1.** By decision of this Court dated April 24, 1986, I held the claim of the Department of State Lands in the amount of $8,073.38 was not a tax. The matter was settled by the Trustee on appeal whereby the Trustee concedes the Department is entitled to a priority tax lien in the sum of $4,036.69.

drastic change in existing bankruptcy law, presummably it would clearly and explicitly have so stated or indicated. It did neither.

\* \* \* \* \* \*

We therefore conclude that in Section 724(b)(1) Congress did not by implication define 'senior' to incorporate the settled federal principle that 'the first in time is the first in right' [*United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954)]. To determine whether the SBA lien was 'senior' to the district sales tax lien under the statute, it is therefore necessary to look beyond the Bankruptcy Code to pertinent nonbankruptcy lien law."

Looking then to Montana law to determine the priority of liens, it is settled that the lien of Granite County in the amount of $65,069.56 assessed for personal property taxes on the mill, machinery and equipment of the Debtor is prior to the ONB mortgage. Such issue was settled in the case of *United States v. Christensen, et al.*, 218 F.Supp. 722, 728–29, (D.Mont.1963), which held in discussing the Montana statutory provisions on real and personal property taxes:

"While the Montana Court has not considered the precise question here presented, the excerpts from the *Mallott* [*v. Board of County Comm'rs of Cascade County*, 89 Mont. 37,] (296 P. 1) and *Hartman* [*v. Mimmack*, 116 Mont. 392,] (154 P.2d 279) cases quoted supra indicate that Montana is one of those states which have recognized that a lien for taxes is superior to other liens, *ex proprio vigore*, even in the absence of a statute expressly so declaring.

\* \* \* \* \* \*

I conclude accordingly: (1) that the liens for state and local taxes assessed against both real and personal property are superior to plaintiff's mortgage; but (2) that this priority does not extend to penalties and interest."

Thus Montana law gives the property taxes assessed by Granite County an absolute priority over the ONB mortgage even though the mortgage was first in time.

What, then, of the other tax claimants? The IRS and Montana claims are in part for unpaid withholding taxes on labor. Certain sums for both tax claimants are for penalties. Section 507(a)(7)(G) provides that a penalty related to tax claims is also entitled to payment if the penalty is in compensation for actual pecuniary loss. Therefore, if such penalties are punitive in nature, they are subordinated in order of payment under Section 726(a)(4), which in this case means the penalties will not be paid because of lack of funds reaching (a)(4). The Proofs of Claim of each claimant created debts owing for principal and pre-petition interest, with statutory penalties excluded, as follows:

IRS—$31,472.41

Montana DOR—$17,967.70 + $14,100.82 = $32,068.52

Employment Security—$5,744.11

State Forestry (per agreement)—$4,036.69

All claims are for taxes within three years of the date of filing of the Debtor's petition. The Montana Department of Revenue also obtained a default judgment against Flint Creek Valley Forest Products, a predecessor in interest of the Debtor, for "slash withholding tax", which has not been contested as a priority claim by the Trustee or any other creditor. The priority Internal Revenue Service lien is governed by the case of *United States v. New Britain*, supra, "the first in time is the first in right". Thus the mortgage takes priority over that lien. The same is true of the liens of the State of Montana for withholding, fuel taxes, unemployment taxes, and the tax of the Department of State Lands. Such liens under Montana law are treated as judgment liens. Section 15–1–701, MCA, provides in pertinent part:

"(2) Upon filing the warrant as provided in 15–1–704, there is a lien against all real and personal property of the delinquent taxpayer located in the county where the warrant is filed. The resulting lien is treated in the same manner

as a properly docketed judgment lien, and the department may collect delinquent taxes and enforce the tax lien in the same manner as a judgment is enforced.

The Employment Security Division is granted a similar right for collection of unpaid contributions under Section 39-51-1304, MCA, which states, "unpaid contributions have the effect of a judgment against the employer" and "the department may enforce the judgment pursuant to Title 25, Chapter 13 * * *." As to the Department of State Land's claim, the statutory scheme for collection of the slash fund due from the Debtor calls for the Department to bring a legal action to recover such debt. Section 76-13-410(3) MCA. In fact, the State Forestry Division followed such provision and recovered a judgment on October 23, 1978. It has long been the law of Montana since the case of *Vaughan v. Schmalsle*, 10 Mont. 186, 25 P. 102 (1890), that a subsequent judgment lien is inferior to a prior mortgage. See also *Clack v. Clack*, 98 Mont. 552, 41 P.2d 32, 37 (1935), which held:

"Accordingly, the lien of a judgment attaches only to the precise interest or estate which the judgment debtor actually and effectively has in the land; it cannot be made effectual to bind or convey any greater or other estate than the debtor himself, in the exercise of his rights, could have voluntarily have transfered or alienated."

Thus, under nonbankruptcy law, the Montana statutes providing for judgment liens,

differs from the real and personal property tax collection statutes, and the doctrine of first in time—first in right is likewise applicable to the remaining Montana tax claimants.

■ Under 724(b)(1) tax liens are subordinated to mortgage or judgment liens that are senior to the tax lien under the first in time doctrine. *Pearlstein v. U.S. SBA, Id.* at 1171. Since the Granite County lien is superior or prior in right to the mortgage of ONB, Section 724(b)(1) has no application to the facts of this case. Thus, we look to 724(b)(2), which provides that the proceeds of property subject to a tax lien shall be distributed—

"(2) second, to any holder of a claim of a kind specified in Section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4) or 507(a)(5) * of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;" [2]

Section 724(b) subordinates or postpones payment of the tax claim to other prior claims in 507(a)(1)–(6), which in this case are administrative expenses [ (a)(1) ] and a wage claim [ (a)(3) ], up to the amount of the tax lien.

Since the passage of the Chandler Act in 1938, it has been the policy of the Bankruptcy Act and now the present Code to postpone or subordinate the payment of the tax lien to protect certain costs of administration and other priority claims. When former Section 67(c)(3) of the Act was amended in 1966, the House Report stated (H.Rep. No. 686, 89th Congress, 1st Session

**2.** A problem with application of 724(b)(2), which does not involve this case, occurred because of recent amendments to Section 507 in 1984 in Pub.L. No. 98–353 (Bankruptcy Amendments and Federal Judgeship Act of 1984). The matter is explained in 4 *Collier on Bankruptcy*, Section 724.03, p. 724–5/6 as follows:

"The effect of Section 724(b) is to treat a tax lien as a claim ahead of the priority for taxes (now Section 507(a)(7) and after the other priorities under Section 507(a) rather than as secured claim. The result was to leave senior and junior lienholders and holders of unsecured claims undisturbed. The original fifth and sixth priorities were found at Section 507(a)(5) and 507(a)(6) of the 1978 Code.

The Code was amended in 1984 to include a new fifth priority for certain farmers and fishermen. To accommodate this new priority, former Sections (a)(5) and (a)(6) of Section 507 were redesignated as subsections (a)(6) and (a)(7). The drafters of the amendments failed to amend Section 724 to account for this change in Section 507(a). * * * failure to amend Section 724(a)(2) appears to have been inadvertent."

The Senate on May 8, 1986, passed a number of technical amendments to the 1984 law in H.R. 2211, among which is Section 325, which provides for 507(a)(6) to be incorporated in 724(b)(2).

(1965), U.S.Code & Admin.News at 2442, 2462):

" * * * The committee believes that if the policy of the Chandler Act to protect the costs of administration and wages is to be given effect, it is necessary to postpone to the costs of administration and wages at least those tax liens which are on personal property and are unaccompanied by possession. It would be grossly unfair for the bankruptcy court and the attorneys who have labored to wind up the bankrupt's affairs and to accumulate an estate for distribution to receive nothing for their labor. It is also socially desirable that the claims of the wage earner who is normally entirely dependent upon his wages for the necessity of life should be paid to the extent of the restriction in Section 64a(2) before the estate is subject to the heavy burden of all tax liens."

In the 1978 Bankruptcy Code, the policy of postponement or subordination was continued and expanded, since 724(b) applies to real property liens as well as tax liens on personal property, and it contains no requirement that the property be unaccompanied by possession. 4 *Collier on Bankruptcy*, Sec. 724.03, pp. 724–6/7 (15th Ed.). After payment of the administrative expenses and wage claims, the third priority or payment is for the tax lien, 724(b)(3). Thus, the balance of tax fund is due Granite County. The fourth priority of payment [724(b)(4)] is to the lien 'junior' to the tax lien, which, in this case, is ONB. This result comes about because of 724(c), which provides that if more than one holder of a claim is entitled to distribution under 724(b)(4), distribution to those claimants is to be made without regard to 724(b), i.e., by nonbankruptcy law. Under nonbankruptcy law, ONB is prior to all of the other tax claims under the doctrine of first in time is first in right.

As noted earlier in this opinion, the real and personal property of the Debtor's estate was sold by the Trustee pursuant to Section 363(f) of the Code, free and clear of liens, with valid liens to attach to the proceeds of sale. After sale of the assets, ONB was paid by order of this Court a partial distribution of $50,000.00. The Trustee has now earned interest on the liquidated collateral totalling $55,017.10. The Trustee urges that the expenses of administration should be paid from said interest, with the balance distributed to the tax claimants on a pro-rata basis. ONB argues that all of the earned interest should be added to the principal amount derived from the sale of the collateral and distributed to ONB.

Section 345 of the Code permits the Trustee to make a deposit or investment of money of the estate in interest bearing accounts which will yield the maximum reasonable net return on the money, taking into account the safety of the deposit. Bankruptcy Rule 5008 governs the procedure for such deposits to implement Section 345. As stated in 2 *Collier on Bankruptcy*, Sec. 345.02, P. 345–11, discussing Section 345:

"The interest or gain realized on the deposit or investment of the funds of the estate will in general become property of the estate and thereby increase the recovery of the creditors."

Such investment has been accomplished in this case resulting in the interest earned as stated above. I think it is clear under the facts in this case that the interest earned from the deposit becomes property of the estate under either Section 541(a)(6) or (7) of the Code.

Section 541(a) of the Code states that commencement of the case creates an estate comprised of the following property, which includes:

"(6) Proceeds, product, offspring, rents or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case."

The term "proceeds" in Subsection (6) is not defined, but the intent of such provi-

sion is to be broadly construed even beyond the definition of proceeds in the Uniform Commercial Code as defined in Section 30–9–306, MCA. 4 *Collier on Bankruptcy*, Sec. 541.19, P. 541–94 (15th Ed.). Subsection 541(a)(7) is new to the Bankruptcy Code, added in 1978. *In Re Wilson*, 694 F.2d 236, 238, 7 C.B.C.2d 895, 897 (11th Cir., 1982) stated:

"Although we agree that Section 541(a)(7) does not render every 'interest in property that the estate acquires after the commencement of the case' available for the debtor's exemption claims, we find that section 541(a)(7) does bring into the estate every such interest not covered by a specific statutory provision mandating some other treatment."

Following such logic, post-petition interest earned by the Trustee from investment in savings accounts is not specifically covered in any other provisions of the Code, including 541(a)(6).

■ If, however, post-petition interest constitutes "proceeds" as that term is used in 541(a)(6) supra, then we must also apply Section 552 of the Code to determine if the secured creditor is entitled to such interest. Section 552 reads:

"(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in section 363, 506(c) 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interests extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

After acquired property subject to a consensual lien is thus voided under 552(a), unless it is saved by 552(b). Under (b) when the pre-petition security agreement extends to proceeds, rents and the like, the terms of the security agreement or applicable nonbankruptcy law will be enforced against the proceeds, acquired after the date of filing of the bankruptcy petition, except, to the extent the court, after notice and a hearing, based on the equities of the case orders otherwise. Further, if proceeds include the post-petition interest earned from the sale of the mortgaged collateral, Section 506(c) allows costs to the trustee to be deducted from the sale proceeds. In this case, however, it is clear the secured party, Granite Lumber, was fully secured to the extent of its tax, exclusive of penalties and interest. ONB was under secured, as the net proceeds from sale of the collateral, after deducting the tax lien of Granite County, was $79,680.44, against a debt due of $491,913.93. Under Section 506(b) of the Code [and 726(a)(5) ], post-petition interest is payable to a secured creditor only if the value of the property exceeds the amount of the claim. Moreover, it is also generally held that post-petition interest is not allowable, notwithstanding the existence of adequate collateral, in the absence of any contractual right through a security agreement. See e.g., *In Re Trent*, 42 B.R. 279, 11 C.B.C.2d 453 (Bankr.W.D. Va.1984); *In Re Nite Lite Inns*, 5 C.B.C.2d 1, 13 B.R. 900 (Bankr.S.D.Cal.1981). There is a split of authority as to whether entitlement to post-petition interest allowed by statute suffices under 506(b). See *In Re Stack Steel & Supply Co.*, 28 B.R. 151, 154 (Bankr.W.D.Wash.1983), holding the local tax authority was not entitled to post-petition interest on a fully secured tax claim, with *Hoffman v. IRS*, 28 B.R. 503, 508 (Bankr.Md.1983), which holds the IRS was

entitled to post-petition interest on its se-cured claim. 3 *Collier on Bankruptcy*, Sec. 506.05, P. 506–40, ft. 5b, states, after citing *In Re Stack Steel & Supply Co.*, supra:

"Pre-Bankruptcy Code precedents more strongly support the latter view, and there is no evidence in the legislative history of 26 U.S.C. 6621 of congression-al intent to change that result."

The Ninth Circuit under the old Act adopted the rationale that interest is not payable to a tax lien claimant, even though oversecured, *United States v. Bass*, 271 F.2d 129, 131 (9th Cir.1959). The theory is stated in *United States v. Edens*, 189 F.2d 876, 877 (4th Cir.1951):

"The equitable considerations which just-ify denying post bankruptcy interest in tax claims in the case of reorganization proceedings are quite as strong as for denying it in straight bankruptcy pro-ceedings. The real reason in either case is that the delay resulting from the insti-tution of the proceeding should not be permitted to benefit one class of credi-tors at the expense of another, but that the rights of all should be determined as of the commencement of the proceed-ing."

It is noteworthy that 506(b), which codified existing law in 1978, *In Re Trent*, supra, states post-petition interest is allowed the over-secured creditor where the "agree-ment" so provides. Accordingly, the Ninth Circuit decisions are binding, so that Gran-ite County is not entitled to post-petition interest on its claim under Section 506(b) of the Code.

■ Based on the foregoing, the post-pe-tition interest earned by the Trustee is an asset of the estate which must be distribut-ed according to Section 726 of the Code. Under 726(a)(1) of the Code, priority claims specified in Section 507(a)(1) to (7)[3] are paid first. This, then, brings us to the crux of the issue in this case. I interpret 724(b) to be implemented to pay administrative costs or other priority claims under 507(a)(1)–(6) only when there are not other funds which are property of the estate. Otherwise, the secured tax lien claimant and secured mortgage holder would in ef-fect subsidize the creditors junior to the senior lien holders. Accordingly, the earned interest in this case shall be ordered paid to cover administrative expenses and priority claims under Section 726 of the Code. This result will thus leave the entire sales proceeds from the collateral of $144,-750.00 to be distributed to Granite County in the sum of $65,069.56 and the balance of $79,680.44 to be distributed to ONB/Camp-bell.

From the interest earned of $55,017.10, the amount of $33,048.41 shall be paid as administrative expense; the sum of $265.70 shall be paid to the wage claimant Lu Ann Courtney and the balance of $21,702.99 shall be distributed pro-rata to the IRS, Montana DOR, Employment Security Divi-sion of Department of Labor and State Lands in accordance with Section 726(b) and 507(a)(7). Those claims total $73,-320.93, so that the pro-rata distribution of $21,702.99, shall be distributed to each claimant at the percentage rate of .296%. Based on such calculation, the Trustee shall pay a dividend as follows:

| | | |
|---|---|---|
| IRS | — | $9,315.85 |
| Montana DOR | — | 9,491.99 |
| Employment Security Division | — | 1,700.36 |
| Department of State Lands | — | 1,194.79 |

All claims are paid without post-petition interest.

IT IS SO ORDERED.

---

**3.** As noted in Footnote 2 of this opinion, Con-gress failed to amend Section 726 to include the 1984 amendment to Section 507(a)(7). Pub.L. No. 98–353 added Subsection (a)(5) to Section 507 and redesignated Subsections (a)(5) and (a)(6) as (a)(6) and (a)(7) respectively. In Sec-tion 726(b), Pub.L. No. 98–353 did not amend the cross-references to Section 507 to reflect the redesignation made in that Section. The intent of Congress to include 507(a)(7) in 726(b) is clear. By technical amendment by the Senate to H.R. 2211, passed on May 8, 1985, Section 326 of H.R. 2211 amends Section 726(b) to in-sert 507(a)(6) and (7). Cong. Record Vol. 132, No. 61, S.5654.