**In re Word and Patricia
SHERRILL, Debtors.**

**Bankruptcy No. 5–86–02065–7.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Oct. 19, 1987.

Martin Seidler, San Antonio, Tex., for trustee.

Christine M. Anderson, FDIC Corp. Legal Div., Midland, Tex.

## MEMORANDUM OPINION

LEIF M. CLARK, Bankruptcy Judge.

The bankruptcy trustee appointed in this case ("the Trustee"), was authorized by previous court order ("the Sale Order") to sell certain real property of the estate free of lien pursuant to Section 363(f) of the Bankruptcy Code. The Federal Deposit Insurance Corporation ("FDIC"), the holder of a consensual mortgage against the property for a debt in excess of $668,000.00, did not object to the Trustee's Motion to Sell. The Sale Order included the following provision:

> [the Trustee] be and is hereby authorized and directed to pay from the proceeds of the sale of such real property *any usual and customary seller's closing costs for the sale of such real property in Midland County, Texas, including, but not limited to both past and current taxes,* recording fees, the cost of a policy of title insurance, plus any usual and customary escrow fees. (emphasis added)

The sale yielded gross proceeds of $305,000.00. Upon what he apparently assumed was the authority conferred by the Sale Order, the Trustee paid title policy charges and recording and transfer charges totalling $1,702.50, and a broker's commission of $18,300.00 to Sherrill Enterprises, Inc. The Trustee also paid pre-petition property taxes of $26,918, a prepetition paving lien of $4,995.56, and postpetition property taxes of $2,421.24.[1] The Trustee deposited the balance of the funds into a segregated interest-bearing account, where they have accumulated an unspecified amount of interest. The Trustee now seeks payment of an additional $12,656.00 for Trustee's fees, bond, and attorney's fees from the proceeds of sale, and authority to distribute the remainder to the FDIC.

The FDIC does not object to the Trustee's having paid the miscellaneous closing costs or the prepetition taxes and paving lien out of the proceeds. However, the FDIC argues that the sales proceeds should not have been charged with the post-petition property taxes, the broker's commission, or be charged with the Trust-

---

1. The closing statement attached to the Trustee's Application merely describes two outstanding tax liens as "delinquent," then prorates 1987 taxes through June 23, 1987. The bankruptcy petition was filed sometime in 1986, though the evidence does not show precisely when. The Court will, for purposes of this opinion only, treat the delinquent taxes and the paving lien as prepetition taxes and the 1987 prorated taxes as postpetition taxes. The FDIC adopted this presumption in its brief.

ee's fee, bond, and attorney's fees.[2] Both parties stipulated to the facts recited in this opinion and put on no further evidence. After considering the arguments of counsel, the Court requested briefs on the possible impact of Section 724(b) on the issues at hand.

## I. THE POST–PETITION TAXES

■ The FDIC's objection to the payment of postpetition taxes out of the proceeds is rendered moot by the express provisions of the Sale Order. There can be no doubt that the Order specifically authorized the Trustee to pay both past *and current* taxes out of the sale proceeds.[3] Even if the postpetition taxes should not have been paid ahead of the FDIC under the priority scheme set out in Section 507(a), as the FDIC contends, the Order itself is *res judicata* on this issue. *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 173, 104 S.Ct. 575, 580, 78 L.Ed.2d 388 (1984). This objection is therefore overruled.

## II. THE TRUSTEE'S FEE, BOND, AND ATTORNEY'S FEES

■ The Sale Order itself does not authorize the Trustee to recover his fee, bond, and attorney's fees from the proceeds of the sale, as they are obviously not usual and customary seller's closing costs for the sale of real property. These costs are not otherwise chargeable against the sale proceeds (all of which are impressed with the FDIC's mortgage) unless authorized by Section 506(c) of the Bankruptcy Code. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 77 (2d Cir.1984). Section 506(c) states that

> The trustee may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). Under this provision, the Trustee must demonstrate that the expenses were reasonable, necessary, and beneficial to the secured creditor whose collateral is to be taxed. *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987). The burden of proof under Section 506(c) lies clearly with the Trustee. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 77 (2d Cir.1984); *Matter of Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); *In re Korupp Associates, Inc.*, 30 B.R. 659, 661 (Bankr.D.Me.1983); *In re Levine's Delicatessen & Restaurant, Inc.*, 53 B.R. 430, 433 (Bankr.S.D.N.Y.1983).

In this case, the Trustee cannot prevail under Section 506(c), for two reasons. First, "Section 506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate." *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982). Second, "[m]ere cooperation with the debtor [or trustee] does not make the secured creditor liable for all expenses of administration." *In re Cascade Hydraulics and Utility Service, Inc., supra.* The overriding factor which compels the Court to reach this conclusion is the availability of Section 724(b) to the Trustee. Nor is the interest which has accrued on the fund available, as that interest is impressed with the FDIC's mortgage.

---

**2.** The FDIC first alleges that neither Section 506(c) nor the Sale Order authorizes the recovery of the Trustee's fee, bond, and attorney's fees out of the proceeds now held on account by the Trustee. For reasons detailed below, the Court agrees. *See* Part II, Opinion *infra.* The FDIC then contends that the Trustee should not have paid the postpetition taxes and the brokerage commission out of the sale proceeds, because Section 506(c) does not permit those payments. To the extent that the Sale Order authorized those payments, it is too late for the FDIC to object to their payment. *See* Part I, Opinion *infra.* On the other hand, it is the province of this Court, not the Trustee, to interpret its orders, including the Sale Order upon which the

Trustee apparently relied in presuming to pay the brokerage commission without seeking further guidance from this Court. To the extent that the Trustee might have "jumped the gun," he did so at his peril. *See* Part III, Opinion *infra.*

**3.** The FDIC acknowledges that the paving lien, which is an assessment by a public body, is essentially a tax lien under Texas law and it is treated as such in this Opinion. *See* TEX.REV. CIV.STAT.ANN., art. 1090 (Vernon 1963); *Pearlstein v. U.S.A. (Small Business Administration)*, 719 F.2d 1169 (D.C.Cir.1983).

A. *When Section 724(b) is available to enable the trustee to recover his administrative expenses, Section 506(c) is not available as an alternative.*

■ Section 724(b) governs the distribution of that property of the estate against which tax liens are asserted.[4] The section in effect dictates that, where there are tax lien claims, those claimants, rather than other secured creditors, will pay for the cost of estate administration. *Matter of Cropper Co., Inc.*, 63 B.R. 874, 876–77 (Bankr.M.D.Ga.1986). The property which the Trustee sold in this case was burdened not only with the FDIC's mortgage but also with various tax liens totalling $33,-354.56. The existence of these tax liens therefore rendered the property beneficial to the estate, and not susceptible to abandonment, because, under Section 724(b), the estate could recover its administrative expenses out of the proceeds attributable to the tax lien claims. *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 247 (6th Cir.1987).[5]

■ When property is burdened by tax liens, as was the case at bar, that portion of the sale proceeds attributable to those tax liens becomes a fund into which the Trustee may dip in order to pay administrative expenses allowed under Section 507(a)(1)–(6), without affecting other secured claims. 11 U.S.C. § 724(b). In this case, a fund of $33,334.56 was available for payment of the Trustee's fee, bond, and attorney's fees (and sale expenses). The estate thus had the means with which to satisfy its administrative expenses. When the Trustee paid the entire fund to the taxing authorities without deducting his costs, he literally gave away the estate's capacity to satisfy its own obligations. This Court holds that, when Section 724(b) is available to enable a Chapter 7 trustee to recover his administrative expenses and costs of sale, the trustee must look to that fund for payment. If he fails to do so, Section 506(c) will not be available as a substitute to "back and fill." [6]

**4.** Section 724(b) provides in pertinent part as follows:

> Property [or its proceeds] in which the estate has an interest and that is subject to a lien … that secures an allowed claim for a tax … shall be distributed as follows:
>
> . . . . .
>
> (2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(b) of this title, to the extent of the amount of such allowed tax claim that is [otherwise] secured by such tax lien;
>
> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
>
> (4) fourth, to any holder of an allowed claim secured by a lien on such property that … is junior to such tax lien;
>
> (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection;
>
> 11 U.S.C. § 724(b).

**5.** Because of the substantial benefit that can be realized from the sale of property subject to tax liens as a result of the operation of Section 724(b), the Sixth Circuit held that *abandonment* of such property is not permitted even though there is no equity over the liens in the property.

> Traditionally, administrative expenses were not charged against secured creditors, *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982),

therefore, there was no benefit accruing to the estate absent equity in the property or some other exception. But this situation has been expressly changed by the Code, which subordinates the tax lien to the administrative creditors, in effect charging the administrative expense against the secured *tax* creditor.

*In re K.C. Machine & Tool Co.*, 816 F.2d at 247 (emphasis added). The Trustee in this case was therefore correct in selling rather than abandoning the property. Indeed, after this decision by the Sixth Circuit, he may have had no choice but to sell the property.

**6.** It could be argued that the Trustee had no choice but to pay the property taxes, due to the language of the Sale Order, which "authorized and directed" their payment. The Court declines to give the Sale Order such a literal reading, however. In construing the Sale Order, the Court is guided by time-honored principles of interpretation. One of those principles is that the language of a document should be so harmonized as to give effect to all of its provisions. Another is that a document will be so construed as to accomplish the purpose for which the document was intended.

Here, the above-quoted language occurs in a final paragraph the obvious principal purpose of which is authorization, rather than direction. That purpose is consistent with the Bankruptcy Code and Rules, which make no particular provision for assuring that closing costs are in fact paid, but do contain protective provisions to prevent unauthorized disbursements without at

■ It is of no legal consequence under the facts of this case that the FDIC might have benefited from the sale or the Trustee's conduct of the sale.[7] "We allow payment of administrative expenses from the proceeds of secured collateral when incurred *primarily* for the benefit of the secured creditor ... [t]o satisfy the benefit test of section 506(c), [the trustee] must establish in quantifiable terms that it expended funds *directly* to protect and preserve the collateral." *In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d at 548 (emphasis added). Whatever benefits might have accrued to the FDIC were only ·incidental to the benefit the Chapter 7 Trustee would obtain for the estate (or for himself) as a direct result of the existence of the tax liens. *In re K.C. Machine & Tool Co.,* 816 F.2d 238, 247 (6th Cir.1987). But for those tax liens, there would have been no good reason for the Trustee not to have abandoned the property to the FDIC instead of selling it.[8] *In Beker Industries Corp.,* 63 B.R. 474, 478 (Bankr.S.D.N.Y.1986). Thus, the sale of this property cannot be said to have been conducted *primarily* for the benefit of the FDIC. *See In re Codesco, Inc.,* 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982).

The Third Circuit observed nearly sixty years ago that generally a trustee in bankruptcy acts "not on the authority of [secured creditors] and for their interest, but on the authority of the court and for the interest of the general creditors." *Robinson v. Dickey,* 36 F.2d 147, 149 (3rd Cir. 1929), *cert. denied,* 281 U.S. 750, 50 S.Ct. 354, 74 L.Ed. 1161 (1930). If a sale is not necessary, a trustee has no business conducting it in the first place. If he does so anyway, he should not recover under Sec-

---

least notice and hearing. *See* 11 U.S.C. §§ 326(b), 503(b); Bankruptcy Rules, Rules 2013(b), 2016(a).

The Sale Order also specifically directed lienholders desiring to recover their claims out of the proceeds to file specific claims against the fund if they wanted to be paid. As is obvious from paragraph (3) of the Trustee's Application, had the taxing authorities failed to file their written notice of claim against the proceeds, the Trustee would not have paid them, notwithstanding the so-called directive in the final paragraph of the Sale Order. The Trustee's own interpretation of the Sale Order (as indicated by his implementation) is thus consistent with the Court's.

The Court is persuaded that the phrase "authorized and directed" is boilerplate language inserted by the Trustee, who drafted the Sale Order, which must give way to the obvious intent of the Sale Order as a whole and to the procedure the order outlined for paying tax lien claims.

The Court is not persuaded that the Trustee would be saved by a literal reading of the Sale Order in any event. It was, after all, the Trustee himself who sought the authority to sell the property in the first place. He thus had within his grasp the means with which to preserve his rights under Section 724(b), either by a reservation within the body of his motion or by simply drafting the order differently. The Trustee still has no one to blame but himself for failing to take advantage of Section 724(b) to assure the payment of his administrative expenses. "Section 506(c) is not intended as a substitute for the recovery of administrative expenses normally the responsibility of the debtor's estate." *In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d 546, 548 (9th Cir.1987).

7. The Court notes in passing that the Trustee failed to put on any significant evidence of benefit to the FDIC attributable to the Trustee's fee, the Trustee's bond fee, or the Trustee's attorney's fees. Some benefit could be presumed to have accrued from the Trustee's efforts to arrange and close the sale, but the Court has insufficient evidence with which to prorate the total administrative expenses to these tasks. What is more, there is no showing that the Trustee's efforts resulted in any better return for the FDIC than it would otherwise have obtained on its own. The burden of proof on these issues is clearly on the Trustee. *In re Flagstaff Foodservice Corp.,* 739 F.2d 73, 77 (2d Cir.1984); *Matter of Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982).

8. In enacting § 554 [which authorizes abandonment of property of the estate], Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions. Some of the early cases condemned this particular practice in no uncertain terms, and decried the practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses.

*In re K.C. Machine & Tool Co.,* 816 F.2d 238, 246 (6th Cir.1987). This Court shares the sentiment of those early cases which condemned that practice. However, this Court agrees with the holding of the Sixth Circuit that abandonment is inappropriate notwithstanding a lack of equity in the collateral when the provisions of Section 724(b) can be invoked for the benefit of satisfying administrative expenses. *See* discussion of Section 724(b), *supra.*

tion 506(c) because there can be no necessary expenses associated with an unnecessary sale. *See K.C. Machine & Tool Co.,* 816 F.2d at 246. On the other hand, when a sale is mandated because abandonment is not an option (because of the availability of Section 724(b) (*See K.C. Machine & Tool Co., supra* at 248)), then the very fund the availability of which mandates the sale also pays the expenses of that mandated sale, so that Section 506(c) should not even arise. *See* 11 U.S.C. § 724(b)(3).

Obviously, the Trustee raises Section 506(c) here because the fund that should have paid the expenses of sale and other administrative expenses is gone, through no fault of the FDIC. Under these facts, whatever benefits did accrue to the FDIC as a result of the sale are immaterial. Otherwise, the Trustee, by the simple expedient of demonstrating some "benefit" to the FDIC, could make the FDIC pay for the Trustee's mistake, a truly anomolous result in a court of equity. *Matter of Transport Clearings–Midwest, Inc.,* 16 B.R. 890, 894 n. 11 (Bankr.W.D.Mo.1979) ("equity will not afford its aid to one who by his conduct or neglect has put the other party in a situation in which it would be inequitable to place him").

B. *Implied consent for purposes of authorizing recovery under Section 506(c) will not be found if Section 724(b) would have permitted a recovery of the trustee's expenses out of the proceeds of a court-ordered sale.*

 Traditionally, a finding that the secured creditor has caused or consented to

the trustee's incurring expenses on its behalf will support an award under Section 506(c). *Matter of Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982). Under such circumstances, a benefit has been generated primarily for the secured creditor for which equity will require the creditor to pay. In this case, however, the FDIC cannot be said to have consented to the Trustee's fee, bond, and attorney's fee expenses. Even if the FDIC could be said to have impliedly consented to the *sale* under Section 363(f) (by reason of its failing to object),[9] it certainly did not thereby consent to having its collateral taxed. *In re Flagstaff Foodservice Corp.,* 762 F.2d 10, 12 (2d Cir.1985). *In re Roggio,* 49 B.R. 450, 453 (Bankr.D. Conn.1985) (consent to sale does not constitute consent to expenses). "Mere cooperation with the debtor [or trustee] does not make the secured creditor liable for all expenses of administration." *In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d at 548.[10]

It would be especially inappropriate in this case to construe the FDIC's acquiescence to the sale as an implied consent to the Trustee's right to recover his expenses out of the FDIC's collateral. The FDIC's acquiescence could as easily support the inference that the FDIC assumed that the Trustee intended to recover his expenses out of the taxing authorities' share of the proceeds instead of out of the FDIC's share. *See* 11 U.S.C. § 724(b) and the discussion *supra; see also Granite Lumber Co.,* 63 B.R. 466, 468–69 (Bankr.D.Mont.

---

9. An implied consent to the sale might conceivably be derived from the fact that the FDIC could in all likelihood have prevented the sale free of liens had it simply objected. *See* 11 U.S.C. § 363(f); *In re Beker Industries Corp.,* 63 B.R. 474, 478 (Bankr.S.D.N.Y.1986); *In re Cox Cotton Co.,* 24 B.R. 930, 938 (E.D.Ark.1982); *Matter of Stroud Wholesale, Inc.,* 47 B.R. 999, 1003 (E.D. N.C.1985).

10. Courts which are sympathetic to equitable factors in favor of the party seeking recovery [under § 506(c) ] have at times inferred consent to recovery of costs and expenses from other forms of affirmative conduct by the holder of a secured claim. Nonetheless, it is improper to imply consent to a recovery of administrative expenses under section 506(c)

from the mere acquiescence by a secured creditor in an attempt to reorganize under chapter 11 or the liquidation of its collateral in a Bankruptcy Code case, *or from a failure to object,* move to lift the automatic stay or take similar action on the part of the secured claimant.

3 *Collier on Bankruptcy,* ¶ 506.06 at 506–59 (15th ed. 1986) (emphasis added). Of course, where the secured creditor does object to the sale, no consent will be implied and the secured creditor cannot be "required to contribute more to the expenses of administration than it would have cost him to foreclose his mortgage under state law." *Reconstruction Finance Corp. v. Rhodes,* 214 F.2d 606, 607 (5th Cir.1954).

1986). Given that Section 724(b) would have applied in this case had the Trustee but employed it, it would be especially "improper to imply consent to a recovery of administrative expenses under Section 506(c) from ... a failure to object ... on the part of the secured claimant." 3 *Collier on Bankruptcy,* ¶ 506.06 at 506–59 (15th ed.1986).

C. *The interest accrued on the sales proceeds is impressed with the lien of the secured creditor and is hence unavailable to satisfy the trustee's expenses.*

■ The interest which has accrued from the proceeds as they have awaited distribution in this case may not be charged with the Trustee's administrative claims. The fund which the Trustee currently holds, while property of the estate, is property impressed with the liens of the FDIC. As such, any interest which accrues on that fund is interest which would have gone to the secured creditor but for the delay incident to bankruptcy proceedings. *See* Tex. Bus. & Comm.Code, § 9.306 (West pamphl. ed. 1986); 11 U.S.C. § 552(b); *In re Aerosmith Denton Corp.,* 36 B.R. 116, 119 (Bankr.N.D.Tex.1983).[11] A contrary reading would in effect encourage a trustee to delay in distributing proceeds of sale while he waited for enough interest to build up to pay his expenses, a result out of step with

Section 704(1) of the Bankruptcy Code. 11 U.S.C. § 704(1); *See In re Desoto Crude Oil Purchasing Corp.,* 35 F.Supp. 1, 7 (W.D.La.1940).

## III. THE BROKERAGE COMMISSION

■ The brokerage commission creates a stickier problem. The Trustee presumed the Sale Order allowed him to deduct and pay the commission from the proceeds without further order from the Court. The fact that the Trustee chose to act upon his presumption does not deprive this Court of the ability to determine whether the Trustee's action was justified. *See* note 2 *supra; In re Nash,* 765 F.2d 1410, 1415 (9th Cir.1985).

The Trustee's payment of the brokerage commission will not be undone provided it was justified under the Sale Order. Unfortunately, the Trustee failed to put on any evidence beyond the fact that a brokerage commission was incurred in the process of selling the property. The Court has thus been left to draw its own conclusions whether the commission may be presumed to have qualified under the Sale Order as "a usual and customary seller's closing cost for the sale of such real property in Midland County, Texas." This Court does not believe the equities of this case are such that such a presumption should be raised in the Trustee's favor.[12]

**11.** While at least one court has held that this interest was not payable to the secured creditor as of right and so could be used to pay the trustee, the court's reasoning was in part premised on a faulty interpretation of Section 506(b). *In re Granite Lumber Co.,* 63 B.R. 466, 472 (Bankr.D.Mont.1986). That court stated that "ONB [the secured creditor] was under secured.... Under Section 506(b) of the Code, post-petition interest is payable to a secured creditor only if the value of the property exceeds the amount of the claim." *Id.* The court confused interest accruing on the *claim* with interest accruing on the *collateral.*

**12.** The Trustee would require the assistance of a presumption in order to meet its burden of proof. *See* note 3 *supra.* A presumption has been defined as "an assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or group of facts found or otherwise established in action." Wright & Miller, 21 *Federal Practice and Procedure,* § 5124 at 586–87 (West 1977). A pre-

sumption shifts the burden of going forward with the evidence to the opposing party. Rule 301, Fed.R.Evid. (West pamphl. ed. 1987).

It could be argued that such a presumption should be invoked in the case of brokerage commissions because such commissions would have been incurred in any event and the FDIC should not be permitted to reap a windfall at the trustee's (or broker's) expense. The bankruptcy court for the Middle District of Florida concluded as much in another case involving the FDIC. *Matter of E.J. Management Corp.,* 72 B.R. 421, 423 (Bankr.M.D.Fla.1987) ("the F.D.I.C. would have been required to market the properties and most likely engage the services of a realtor to whom it would have been required to pay a real estate commission ..."). For at least two reasons, however, this Court declines to convert that court's otherwise reasonable inference into a presumption in favor of the Trustee. First, it could as easily be argued that the FDIC would *not* have required brokerage services to market this property, at

In view of the Trustee's failure to support with competent evidence his payment of the brokerage commission, the Court would be entitled to find that the payment was improper and should be refunded. Such a ruling would impose a subtantial hardship on the Trustee, however, who would have to come up with $18,300 out of his own pocket. This Court will not impose such a harsh result without at least affording the Trustee an opportunity to put on such proof as he might have that the commission was properly chargeable against the proceeds under the Sale Order. A rehearing for that purpose will therefore be afforded the Trustee.

### IV. CONCLUSION

The Court therefore holds that the proceeds from the sale of the real property, which are on account with the Trustee, including accrued interest, are impressed with the FDIC's mortgage, and that the trustee's fees, bond, and attorney's fees may not be taxed against these proceeds under Section 506(c) because the estate could have paid these expenses via Section 724(b), but chose not to. The Court further holds that principles of *res judicata* bar further dispute regarding the Trustee's payment of the post-petition property taxes out of the proceeds. The proceeds on hand in the Trustee's account, including accrued interest, are to be paid over to the FDIC. A rehearing will be held to determine whether the brokerage commission should be recovered from the Trustee as having been improperly charged against the FDIC's proceeds. An Order will be entered consistent with this opinion.

least not in Midland, Texas, where it has a large internal staff charged with disposing of the FDIC's enormous real estate portfolio in that city. Second, before the FDIC ever incurred brokerage fees, it would first have to foreclose its mortgage *and* be the successful bidder at the foreclosure sale. This Court would therefore have to indulge the further presumption that secured creditors are always the successful purchasers at nonjudicial foreclosure sales, a holding which would tend to undermine the efficacy of such sales in Texas.