**In re DOWCO PETROLEUM, INC., Debtor.**

**Bankruptcy No. TY–86–01221.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

Feb. 20, 1992.

---

Dale Thomas, Chapter 7 Trustee, Longview, Tex.

Bob Anderson, Smead, Anderson, Wilcox & Dunn, Longview, Tex., for Chapter 7 Trustee.

Michael Gazette, Tyler, Tex., for Citizens State Bank.

John R. Bolster, Pritchard & Pritchard, Longview, Tex., for Henderson Independent School Dist. & Rusk County.

Chris Moser, Dallas, Tex., for Banc One.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for consideration of the Trustee's Motion to Subordinate Lien of Henderson Independent School District and Rusk County and the Trustee's Motion to Distribute Secured Proceeds pursuant to regular setting. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all the issues presented to the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this matter are not in dispute. Pursuant to this Court's Order Authorizing the Sale of Assets Free and Clear of Liens, entered on this Court's docket on June 20, 1991, the Chapter 7 Trustee, hereinafter ("Trustee"), sold numerous properties of the Chapter 7 Debtor, Dowco Petroleum, Inc., hereinafter ("Debtor"), for an aggregate sum of $403,168. The Order of

Sale provided that any liens affecting the property attach to the proceeds of sale. The sale of one of the groups of property realized a sum of $194,055. This property was fully encumbered by a consensual mortgage granted in favor of Banc One. Banc One's claim against this property exceeds $1,000,000.00 and hence, Banc One is undersecured. For purposes of this opinion this group of property shall be referred to as the ("Banc One Property"). Also encumbering the Banc One Property are the liens of the Henderson Independent School District and Rusk County, hereinafter referred to as ("Henderson"), in the amount of $41,715.34 and the claim of the State of Texas for severance taxes in an unspecified amount. The parties are in agreement that due to operation of the state laws of Texas the Henderson claim for property taxes is superior in priority to Banc One's claim. The parties are also in agreement that vis-a-vis the prior two parties, the State of Texas is in a third priority position and hence unsecured as to this claim.

The second group of properties sold by the Trustee yielded a balance of $209,113. This property is encumbered by the consensual mortgage of Citizens Bank in an amount, as of the petition date, of $56,997.18. In addition, unpaid property taxes owed to Henderson amounted to $10,903.46 with severance taxes imposed by the State of Texas amounting to $67,324.73. For the reasons previously stated, Henderson is in a priority position with regard to this property, hereinafter referred to as ("the Citizens Bank Property"), and the State of Texas maintains a third priority position. Due to the existence of equity beyond the existing lien interests, all parties are fully secured.

In an attempt to effectuate a distribution of the proceeds of the sale of Debtor's properties, the Trustee has filed two motions. The first motion is entitled "Trustee's Motion to Subordinate Lien of Henderson Independent School District and Rusk County." Cognizant of the impact of Code section 724(b),[1] which provides a mechanism for the Trustee to recover administrative expenses to the extent of an existing tax lien, the Trustee has requested that this Court make a determination as to the entitlement of Henderson to obtain post-petition interest on its claim. The Trustee's concern is that if Henderson is allowed to accumulate post-petition interest, the equity cushion that the estate maintains in the Citizens Bank Property will be eroded. Secondly, although it is unclear from the Trustee's motion, it appears that the Trustee desires a judicial determination that the Henderson claim is subordinated to the other liens. The Trustee desires subordination due to his inability to ascertain the final extent of administrative expenses, the recovery of which might rest on the retention of the Henderson share of the proceeds pursuant to section 724(b).

Expectedly, Henderson objects. It is the position of Henderson that the Trustee has misconstrued the order of distribution scheme set out in section 724 with the principle of equitable subordination. It is the position of Henderson that only administrative expenses which have been incurred prior to the sale of Debtor's property are properly subject to payment out of Henderson's proceeds. Henderson maintains that any other conclusion would be fundamentally unfair in that it would allow the Trustee to sit back and accumulate administrative expenses at the expense of Henderson's claim. Henderson desires an immediate distribution of its claim less any readily ascertainable administrative expenses.

Accompanied by the Trustee's Motion to Subordinate the Lien of Henderson is the Trustee's Motion to Distribute the Secured Proceeds. In pertinent part, the Trustee proposes to disburse to Banc One $145,699.18 less a $10,000.00 reserve fund, out of which any interest accruing on the Henderson claim, if any, would be paid. The Trustee also proposes to distribute to Citizens Bank an amount not to exceed $56,997.18 plus unspecified interest and attorney's fees. Finally, while the Trustee's

---

1. All statutory references are to Title 11 of the United States Code.

Motion also sought to distribute to the State of Texas the sum of $67,324.73, the Trustee orally waived this intention at the regularly scheduled hearing and the Court will not consider that request for the purpose of this opinion.

## DISCUSSION OF LAW

Necessary to a resolution of the issues before the Court is an examination of section 724(b) as well as its attendant case law. Section 724(b) provides

Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

1. first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

2. second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

3. third, to the holder of such tax lien to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

4. fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

5. fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

6. sixth, to the estate.

Section 724(b) provides a mechanism through which the estate can, if necessary, recover certain enumerated categories of administrative expenses from the proceeds of the sale of property subject to a tax lien. *In re: Packard Properties, Ltd,* 112 B.R. 154, 156 (Bankr.N.D.Tex.1990). In the present case, this section is of particular relevance due to the presence of the se-

cured tax claims of Henderson and the State of Texas providing well in excess of $100,000.00 from which the estate has a potential source for recovery of its administrative expenses. However, section 724(b) does not provide an unlimited avenue for recovery of administrative expenses by a chapter 7 trustee. By operation, section 724(b) does not change the priority ranking of liens. The claim of a tax lien retains its priority vis-a-vis all other liens encumbering the property except to the extent that the proceeds subject to the lien are utilized for permissible administrative expenses. At that point, to the extent the tax lien is displaced, it becomes a special category of unsecured claim which is payable prior to a distribution to general unsecured claims. Section 724(b)(6); *In re: Darnell,* 834 F.2d 1263, 1268 (6th Cir.1987) (under section 724, property is not distributed to the estate (§ 724(b)(6)) until all liens, both tax and nontax, are satisfied); *In re: Atlas Commercial Floors, Inc.,* 125 B.R. 185, 187 (Bankr.E.D.Mich.1991); *In re: Packard, supra* at 156.

As a result of the statutory scheme envisioned in section 724(b), the Chapter 7 trustee is required to exhaust all unencumbered funds of the estate in the payment of administrative expenses before resorting to the priming option of taxing administrative expenses against the proceeds encumbered by a taxing entity's lien. *In re: Granite Lumber Company,* 63 B.R. 466, 473 (Bankr.D.Mont.1986). The court is of the opinion that this conclusion is self-evident. If the estate contains enough unencumbered funds to satisfy administrative claims, no justification exists for priming a taxing entity's otherwise valid lien. Against this backdrop, the Court will now analyze the Trustee's Motion to Subordinate the Lien of Henderson Independent School District and Rusk County.

First, the Court will address the parties' contentiousness over the use of the term subordination. Henderson's concerns over the use of the term subordination stem from the alleged inference that the Trustee is attempting to equitably subordinate its claim pursuant to section 510(c). The

Court's review of the Trustee's motion belies this assumption. The Trustee's reference to subordination must be read in context with section 724. In practice, section 724(b) has the effect of allowing certain administrative claimants to step into the shoes of certain tax lien holders. As a result, to the extent that the proceeds secured by these tax liens are used to satisfy these administrative claims, it is not an incorrect characterization to refer to this transformation as a subordination of the tax lien. As such, the Court does not find the Trustee's use of the term subordination to be objectionable.

■ A second issue raised by Henderson and the Trustee is more complicated. The Trustee and Henderson are not in agreement that Henderson's tax liens are entitled to interest. The Court is of the opinion that this issue has been dispositively resolved by the Supreme Court's holding in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) in which the Court held that nonconsensual oversecured liens are entitled to post-petition interest pursuant to section 506(b). In this case, Henderson is oversecured as to both the Banc One and the Citizens Bank properties. Therefore, Henderson is entitled to post-petition interest on its claims.

■ The third contention advanced by Henderson is that section 724 does not envision the subordination of tax liens pending the accrual of future administrative expenses which do not relate to the transaction in question i.e., the sale of the properties encumbered by the tax liens. It is the position of Henderson that the Trustee should distribute these tax proceeds save any reduction for administrative expenses incurred as a result of the sale. Henderson maintains that allowing the Trustee to retain these proceeds pending the closing of the estate would only serve to unjustifiably tax Henderson's lien through the accrual of additional administrative expenses and that this would be violative of the Trustee's duty per section 704(1). In support of these contentions, Henderson cites *In re: Sherrill*, 78 B.R.

804 (Bankr.W.D.Tex.1987). In the Court's opinion, Henderson has misread both section 724 and the holding in *Sherrill*.

Nothing in the Code or resultant case law limits the Trustee's use of section 724(b) to the payment of administrative expenses incurred only in the actual sale of the property encumbered by the tax lien. As the Court has previously stated, the opposite result is envisioned. Furthermore, Henderson's reliance on *Sherrill* is misplaced. In *Sherrill*, the Chapter 7 trustee, upon the sale of estate property encumbered by tax liens and a consensual mortgage, promptly paid the tax liens off in full and then attempted to charge the administrative cost of the sale to the consensual lien holder pursuant to section 506(c). The court held that the trustee, by paying off the tax liens had "[given] away the estate's capacity to satisfy its own obligations." *Id.* at 807. Had it not been for the existence of those tax liens, the court concluded that the trustee would in all likelihood have been required to abandon the property for lack of equity. Since the trustee had chosen to fritter away the option of utilizing 724(b) the court held that the trustee was foreclosed from attempting to tax the cost of the sale against the consensual lien holder pursuant to section 506(c). Nothing in the court's opinion limits the trustee's use of 724(b) to the satisfaction of the costs incidental to the sale.

Finally, Henderson's reference to the *Sherrill* opinion and section 704(1) is also misplaced. In *Sherrill*, the court held that any interest accruing on the claim of a consensual lien holder as a result of its oversecured status is impressed with the lien of the lien holder instead of inuring to the benefit of the estate. *Id.* at 810. The court concluded that if this were not the case, a trustee would have every incentive to hold onto proceeds of a sale in order to recover administrative expenses. *Id.* In this Court's opinion, the reasoning of the *Sherrill* court on this point must be read consonant with the factual background of the case in which the tax claims had already been paid thereby negating any in-

terest the trustee had in retaining the remaining proceeds of the sale.

■ Accordingly, the Court is of the opinion that to the extent the Trustee is requesting that this Court implement section 724(b) and rule that the claim of Henderson is effectively subordinated to administrative expenses the Court holds that such a request is premature until such time as a resort to section 724(b) should prove necessary. Furthermore, to the extent that the Trustee has harbored any uncertainty as to the entitlement of Henderson's lien to post-petition interest, the Court believes that its previous comments have addressed that factor. For those reasons, it is the opinion of the Court that the Trustee's Motion to Subordinate Lien of Henderson Independent School District and Rusk County should be DENIED.

### Motion to Distribute Secured Proceeds

As previously stated, the Trustee proposes to distribute out of the proceeds of sale the sum of $145,699.18 to Banc One less a $10,000.00 reserve plus an amount to Citizens Bank not to exceed $56,997.18 plus interest and attorney's fees. Counsel for Banc One argues that such a distribution is mandated by the terms of this Court's Order Approving the Sale Free and Clear of Liens. Counsel for Banc One indicated that Banc One had supported the Trustee's Motion Seeking Approval of the Sale Free and Clear based on the representation of the Trustee that the proceeds of the sale would be disbursed promptly. Banc One's concern is understandable. The longer the Trustee holds the proceeds from the sale of the Banc One property the more Henderson's tax claim increases at the expense of an already severely undersecured Banc One. For its part, Citizens Bank urges that the proceeds secured by its lien be released to prevent a further drain on the estate. Given the significant equity achieved as a result of the sale of the Citizens Bank property, Citizens Bank is currently oversecured by approximately $100,000. Accordingly, the longer the Trustee retains the Citizens Bank proceeds the more the corresponding accrual of interest will decrease the estate's interest in the unencumbered funds resulting from the sale. As to Citizens Bank's posture, the Court is in basic agreement. However, the Court finds that Banc One's position is more troubling.

Had it not been for section 724(b), the Trustee would have had no incentive other than to abandon the Banc One property as a burden to the estate. However, the presence of section 724(b) precludes any such abandonment. *See In re: K.C. Mach. and Tool Co.*, 816 F.2d 238, 247 (6th Cir.1987) (compelled abandonment is not available where administration promises a benefit to the estate. Administration promises a benefit in this case by virtue of section 724(b).).

In evaluating the merits of the Trustee's Motion to Distribute Secured Proceeds, the Court is faced with numerous conflicting justifications for approval of the sale *vel non*. First, the Court is concerned that Banc One supported the sale of its collateral under the assumption that it would receive a prompt distribution of its proceeds. However, if the proceeds of the sale are distributed pursuant to the relative priorities in effect as of the date of the sale, two other parties would be implicated. Obviously, since the claim of Henderson retains a priority position vis-a-vis Banc One, and therefore is in a position to increase its claim due to the accrual of interest, any distribution would have the effect of hindering the Trustee's ability to tap any accrual on the Henderson tax lien by virtue of section 724(b). Another consideration is the status of Henderson itself. As previously stated, a resort to section 724(b) by the Trustee is optional not mandatory. To the extent that enough unencumbered funds exist to pay all outstanding section 507(a)(1) through (a)(6) administrative claims, a resort to section 724(b) would not be necessary and Henderson would theoretically be entitled to recover the value of its lien plus accrued interest. Only if unencumbered funds were insufficient to pay these enumerated administrative claims would the Trustee be justified in priming Henderson's lien. At that point, Henderson would still retain its priority status to the extent that its lien was not

exhausted through the payment of administrative expenses. Since a payment of all of Banc One's collateral would have the effect of eliminating Henderson's ability to accrue interest, the status of Henderson's claim would be irrevocably changed. This is not the intent of section 724(b).

The first observation the Court feels compelled to make on this specific situation is that it is a perfect example of the problems created by lengthy administration of a Chapter 7 case. The entire framework and concept of the liquidation of an estate under Chapter 7 envisions a rapid marshalling of the assets, sale or abandonment thereof and distribution of the proceeds to the parties entitled thereto. Obviously, the quicker this is done the fewer problems one has to deal with insofar as the accumulation of interest and the accumulation of administrative expenses. Since we are in a situation where there has been a somewhat lengthy liquidation period, the problem of accruing interest and increasing administrative expenses grows more significant as time goes on. A great deal of the uncertainty involved in this kind of situation would be eliminated if all assets were disposed of and the Trustee was ready to distribute the proceeds to the proper parties.

■ Despite the Court's observations concerning the length of time the case has been under administration, we must deal with the facts as they exist. These facts and the policy matters contained in the preceding discussion leave the Court with several conflicting considerations. From these considerations, the Court draws the following conclusions. First, it is clear that Citizens Bank is vastly oversecured and that the continued retention of the proceeds attributable to Citizens Bank's claim serves only to deplete the estate's equity due to the accrual of allowed interest. It is therefore, the Order of this Court that the Trustee distribute the amount of $56,997.18 plus interest and allowable attorneys' fees to Citizens Bank.[2]

■ The situation of Banc One, however, involves conflicting equities. First, there is Banc One's reliance on the language in the Court's Order Approving the Sale of its Collateral. Counter-balancing that concern is the reality that had it not been for the sale, Banc One's position would still be a second priority lien holder in an unsold property which would not be subject to abandonment by the estate. The Court finds that in balancing these equities a disbursal to Banc One is not mandated; however, the Court is certainly sympathetic to Banc One's position as its collateral has now been converted to a cash fund being held by the Trustee. That cash fund is not being held for the exclusive benefit of Banc One. There are competing claimants (in the nature of the administrative claims) which prime Banc One although the exact amount of those claims is not known nor is the exact amount of the available fund to pay administrative expenses known. Another unknown is whether or not there will be unencumbered funds of the estate which would have to be expended first to satisfy administrative expenses. Prudent practice would dictate that the Court can not make a piecemeal distribution of a fund with that number of unknowns in the pool of claimants. The solution is for the Trustee to promptly liquidate the remainder of the estate and be prepared to make a final distribution. There has been no showing before this Court to explain why that can not be done, and this Court feels compelled to deny any request for distribution of the fund until there is either a complete distribution of the estate or some demonstration by the Trustee that a force beyond his control will extend the administration of this case an inordinate amount of time. Equity would certainly require the Court to make some determination as to an interim distribution in the event of an inordinately delayed conclusion of this case. In the absence of such a showing, the Court is convinced that these funds should remain intact in the bankruptcy estate so that a complete and accurate distribution can be made at the conclusion of the administration. Accordingly, Trustee's present Mo-

---

2. Authorized by separate order entered November 20, 1991.

tion to Distribute Secured Proceeds is DENIED.[3]

---

**3.** For future reference, the Court strongly encourages the Chapter 7 Trustee to review the discussion of the mechanics of applying section 724 as detailed in *In re: Darnell* 834 F.2d 1263, 1267 n. 9 (6th Cir.1987).