**In re Carl A. & Eva GIFALDI, Debtors.**

**Bankruptcy No. 94–11517 B.**

United States Bankruptcy Court,
W.D. New York.

March 31, 1997.

---

**55**

Nixon, Hargrave, Devans & Doyle L.L.P., Rochester, NY (Robert E. Bramlet, Bruce Kratz, of counsel), for Lennar Northeast Partners, Successor–in–Interest to The Chase Manhattan Bank, N.A., Movant.

Goldman, Costa, Getman & Biryla, Buffalo, NY (Jack L. Getman, of counsel), for Chapter 11 Trustee.

Alice Messina, Deputy Corporation Counsel, Rochester, NY.

CARL L. BUCKI, Bankruptcy Judge.

Lennar Northeast Partners L.L.P. is a secured creditor holding mortgages that encumber commercial properties of the debtors. It brings this motion for an order determining the lien status of post-petition real property taxes, and to compel a reapplication of tax payments that the debtors made in violation of a prior order restricting the use of cash collateral.

Carl and Eva Gifaldi, the debtors herein, filed a joint petition for relief under Chapter 11 of the Bankruptcy Code on May 24, 1994. At that time, The Chase Manhattan Bank, N.A., was the owner of mortgages covering real property of the debtors on Walden Avenue in the Town of Cheektowaga and on University Avenue in the City of Rochester. The bank's lien further extended to rents and to any proceeds of insurance. Within three weeks of the bankruptcy filing, the bank moved to restrict the debtor's use of cash collateral and to vacate the automatic stay. Thereafter, with the consent of Chase, this Court issued an order authorizing the limited use of cash collateral. Although the debtors could use rents to pay "the normal and usual expenses of maintaining the premises," expenditures for more than $1,000 would generally require preapproval from the secured creditor.

In January of 1995, the debtors' property in Rochester sustained water damage. For this loss, the debtors received four checks totaling $605,456.15 from its insurance carrier. By this time, Lennar Northeast Partners L.L.P. had become the successor in interest to Chase. Although three of the checks were made jointly payable to Lennar, the debtors deposited the proceeds into their

debtor-in-possession account without the endorsement of the mortgagee. Then, without either the consent of Lennar or authorization from this Court, the debtors paid the sum of $212,683.26 from those proceeds to various municipalities on account of post-petition real estate taxes.

■ Because the Gifaldis filed their bankruptcy petition prior to the effective date of the 1994 Bankruptcy Amendments, the validity of a real property tax lien is subject to the ruling of the Second Circuit in *Lincoln Savings Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Association)*, 880 F.2d 1540 (2d Cir.1989).[1] This decision held that by reason of section 362 of the Bankruptcy Code, the filing of a petition operates to stay municipalities from perfecting a lien upon property of the estate for any real estate taxes whose tax status date occurs subsequent to the date of bankruptcy. In the present instance, therefore, the automatic stay has precluded the perfection of a real estate lien for those post-petition taxes which the Gifaldis paid from the proceeds of insurance. Contending that the debtor lacked any authority to effect these disbursements, Lennar now asks this Court to compel the various taxing authorities to reallocate these payments to the satisfaction of pre-petition tax obligations. Further, Lennar's motion requests the entry of an order determining that post-petition real estate taxes "do not constitute liens against the Properties, and that any liens for postpetition taxes which may now be outstanding of record are void, and directing that any and all such liens be immediately canceled of record."

■ In seeking a reallocation of tax payments, Lennar argues that section 363(e) of the Bankruptcy Code requires that the debtors' use of cash collateral be subject to such conditions as are "necessary to provide adequate protection" of Lennar's interest. It asserts that this adequate protection may properly include the reapplication of moneys paid to the taxing authorities. For the reasons hereafter set forth, these contentions are wholly without merit.

■ The payment of post-petition real property taxes was a voluntary act of the debtors. The taxing authorities merely accepted payment, and have done nothing to violate the automatic stay or to breach any outstanding order of this Court. Such taxes are a proper expense of administration. Indeed, the debtors were obliged to pay the real estate taxes as they became due and owing. Section 959(b) of Title 28 mandates that a debtor-in-possession "manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated." Having assumed the role of trustee, the debtors held the status of agents conducting business under authority of a United States Court. Under the provisions of 28 U.S.C. § 960, the Gifaldis were, therefore, "subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." Although these statutes do not condone any violation of the cash collateral order, they do confirm the *bona fides* of the taxing authorities in their acceptance of payment.

■ Lennar correctly notes that it was entitled to receive adequate protection of its interest in the mortgage. The issue is whether that adequate protection should extend to payments that the taxing authorities have received. As to this question, Lennar urges reliance on 11 U.S.C. § 361(3), which states that adequate protection includes such other relief "as will result in the realization of the indubitable equivalent of such entity's interest in such property." The difficulty with Lennar's argument is that a reallocation of payments would assure not an indubitable equivalent, but a position of superior value. Notwithstanding the failure of the cash collateral order to authorize payment of post-

---

1. The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, has overruled the holding in *In re Parr Meadows*, by enacting a further exception to the automatic bankruptcy stay. Section 362(b)(18) of the Bankruptcy Code now provides that the automatic stay does not operate to preclude "the creation or perfection of a statutory lien or an ad valorem property tax imposed by the District of Columbia, or a political subdivision of a State, if such tax comes due after the filing of the petition."

petition taxes, such obligations are properly chargeable to the secured creditor pursuant to section 506(c) of the Bankruptcy Code. It provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving ... such property to the extent of any benefit to the holder of such claim." Even when post-petition taxes do not give rise to a real estate lien, they do represent a reasonable and necessary expense for that property. Real property taxes are presumed to constitute payment for benefits rendered to the real estate. Otherwise, they would create administrative liabilities that would survive the disposition of the property. Because these taxes are properly chargeable to the mortgagee under section 506(c), Lennar's interest is subject to that potential claim. A reallocation of tax payments seeks, therefore, to give Lennar something greater than the indubitable equivalent of an interest that would be subject to payment of post-petition taxes.

 Lennar also seeks a declaration that post-petition taxes do not constitute liens against the properties. To the extent that Lennar seeks to restate the holding of *In re Parr Meadows,* such a declaration is unnecessary. Nothing indicates that any taxing authority has presumed to seek enforcement of a non-existent lien. On the other hand, to the extent that Lennar seeks to determine that post-petition taxes will never constitute liens, such a declaration is premature. Taxing authorities are still at liberty to seek stay relief to permit the imposition of a lien for these liabilities. Section 362(c) of the Bankruptcy Code also enumerates various circumstances under which the automatic stay will terminate. Upon such termination, taxing authorities will again be free to perfect their liens for any real property taxes.

In *In re Parr Meadows,* the Court of Appeals considered the unusual circumstance in which taxing authorities had agreed to a stipulated order allowing the sale of real property free and clear of all liens and encumbrances, with all such liens and encumbrances to attach to the proceeds of sale. Thus, the facts precluded the possibility of stay relief to allow for a future imposition of liens for post-petition taxes. Until such possibility is exhausted, this Court is not prepared to issue a declaration regarding the prospective status of title.

Even if it were asserting a meritorious position, Lennar may not seek its desired relief through means of a motion. With an exception that is not here relevant, Bankruptcy Rule 7001 defines an adversary proceeding as the proper method "to determine the validity, priority, or extent of a lien or other interest in property." Although a motion would serve as the appropriate method to determine the adequate protection that the debtors must assure, Lennar must employ an adversary proceeding to secure the relief that it seeks from such non-debtor entities as taxing authorities.

For all of the reasons set forth above, the motion of Lennar Northeast Partners L.L.P. is denied.

So Ordered.