**In re Brian D. SOLTAN, Debtor.**

**Bankruptcy No. 897–83401–478.**

United States Bankruptcy Court,
E.D. New York.

May 20, 1999.

Neil H. Ackerman, Ackerman & Terry, LLC, Westbury, NY, Chapter 7 Trustee.

Flower & Medalie, Bay Shore, NY, by Jeffrey Herzberg, Special Counsel for Trustee.

U.S. Department of Justice, Tax Division, Washington, D.C., by Bartholomew Cirenza, trial attorney.

Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY, by F. Franklin Amanat, Assistant U.S. Attorney.

Robert J. Cimino, Suffolk County Attorney, Hauppauge, NY, by Janice Shea, Assistant County Attorney.

Scheinberg, Finno & Schwartz, P.C., Brooklyn, NY, by Ralph B. Finno, for Beneficial Mtg. Corp.

## DECISION ON TRUSTEE'S MOTION TO DISTRIBUTE SALE PROCEEDS UNDER 11 U.S.C. § 724(b) AND FOR INTERIM COMPENSATION

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court are two separate motions brought by Neil H. Ackerman, Esq., the Chapter 7 Trustee ("Trustee") in this case. The first motion is the Trustee's motion pursuant to 11 U.S.C. § 724(b) which seeks, "an order subordinating the tax claims and other liens to the payment of the administrative claims in accordance with § 724(b) of the Bankruptcy Code" and "an order as to the appropriate distributions of the remaining net sales proceeds in accordance with said provision." The second motion is the Trustee's application, pursuant to 11 U.S.C. §§ 326, 330, 331, 507(a)(1) and 724(b)(2) for an order awarding interim compensation to the Trustee and Trustee's counsel, together with the reimbursement for expense in connection with the sale of one of the assets of this Debtor's estate.

Opposition was filed by the United States Attorney on behalf of the Government, i.e. the Internal Revenue Service ("IRS"). Suffolk County objected to the subordination of their real property tax claims. The IRS opposes the Trustee's motion seeking a distribution of administrative expenses to the Trustee and Trustee's counsel and to the Trustee's application for distribution pursuant to § 724(b), claiming that the distribution is premature and inappropriate at this time based on the fact that the Trustee has not as yet liquidated all of the Debtor's property, nor

can the Trustee identify all of the costs of administration in this case at this time. The government also disagrees with the Trustee's method of calculation in regard to a distribution due to the Trustee based on § 724(b) of the Bankruptcy Code and seeks a determination of this Court as to the appropriate method of distribution when all prerequisite information is available.

Suffolk County objects to its treatment by the Trustee in his Plan of Distribution, claiming that all county real property taxes that arise subsequent to the filing of the petition are to be deemed an administration expense and a secured interest in the real property. Since several important issues have been raised, the Court will address all of the issues that are present before it at this time.

## Issues Presented

1. Whether it is appropriate at this time in the case pursuant to 11 U.S.C. § 724(b) to pay preferential administration expenses and counsel fees to the Trustee and Trustee's counsel in connection with liquidating one asset of an estate before all of the estate's assets have been completely administered and before the fee applications and any other administrative expenses are finally determined.

2. Whether Suffolk County is entitled to receive payment for unpaid post-petition property taxes as an administration claim and how this would effect the distribution to all lien creditors pursuant to 11 U.S.C. § 724(b).

3. Whether it is appropriate at this time for the Court to order the subordination of all tax liens to these administrative claims.

4. In the event a distribution is to be made pursuant to 11 U.S.C. § 724(b), what is the proper analysis and computation to be applied to the various lien claims from

the proceeds obtained from the sale of the assets.

## Facts

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on May 7, 1997. On Schedule "A", the Debtor listed two parcels of real property, a residential property at 120 Elder Road, Islip, New York (the "Elder Road Property") with a current market value of $650,000 owned by the Debtor in fee simple, and occupied by him and his family as his residence; and a commercial property (a gas station/body shop) located at 109 Carlton Avenue, East Islip, New York (the "Carlton Avenue Property"), with a claimed market value of $400,000. According to the Debtor's schedules, both properties were encumbered by mortgages, tax liens and judgment liens in the total amount of $1,071,-650.00.[1] The Debtor also identified other personal property.

A number of creditors asserted secured claims against the estate. These included:

1. IRS (for pre-petition income tax liability);

2. State of New York (for pre-petition income tax liability);

3. County of Suffolk (for unpaid pre-petition property tax assessments).

4. A first and second mortgage on the Elder Road Property—

 a. the first of which was held by Bethpage Federal Credit Union ("BFCU"); and

 b. the second mortgage held by Beneficial Mortgage Corporation ("Beneficial") (both mortgages were in arrears and BFCU had commenced a foreclosure action and obtained a judgment of foreclosure and sale, pre-petition);

5. Five judgment lien holders.

Neil H. Ackerman, Esq., was appointed Chapter 7 Trustee in this case. Although the two mortgagees moved to vacate the stay in order to foreclose on this property,

---

1. The judgment and tax liens (except for the real estate taxes on each specific property) all attach to both properties as both properties are in Suffolk County and the liens are recorded there.

the Trustee opposed their request, indicating that he believed that there may be equity in the property which would inure to the benefit of other creditors over and above the amounts due to the mortgagees. The Court denied the motions to vacate stay without prejudice in order to provide a reasonable period of time for the Trustee to obtain an offer that could benefit the estate. With leave of the Court, the Trustee engaged various auctioneers, marketers and brokers in order to market the Elder Road Property on behalf of the Debtor's estate. None of these resulted in any substantial offer on the real property over and above what may have been due to the mortgagees. Meanwhile, the Debtor himself tried to market the Elder Road Property without the use of a realtor or broker of any kind and was able to obtain an offer and an executed contract to purchase the Elder Road Property for $635,-000. This offer was greater than the Trustee's own appraisal and appeared to be a very good arms-length offer for the property. The Trustee then took time to attempt to obtain an even higher offer, but ultimately noticed this offer for sale at the offering price, or for any higher or better offer, and placed the issue of the sale before this Court.

The Trustee moved to sell the Elder Road Property to the purchaser on an "as is" basis for $635,000, free and clear of all liens or claims with all such claims to attach to the proceeds of the sale. Included in the motion was a request that the tax liens secured by the property be "subordinated" in the manner required by 11 U.S.C. § 724(b). In addition, the motion sought a declaration from the Court to the effect that "no interest is accruing post-filing date on any judgment or tax lien." The Trustee represented in this motion that all of the judgment liens will be satisfied and that the tax warrants will be partially satisfied by the sale of the real property at the $635,000 sale price. The Trustee further did not seek to distribute the entire net proceeds of the Elder Road Property to all of the various secured cred-

itors of the estate. The Trustee indicated that "only the mortgage lien debt will be paid out of the sale proceeds" and requested permission to pay David M. Maltz, Auctioneer ("Maltz"), one percent commission and to reimburse himself out of the net proceeds for insurance expenses that he had incurred on both the Elder Road Property and the Carlton Avenue Property. He further indicated that he intended to sell the Carlton Avenue Property, which would provide sufficient funds for the full satisfaction of the lien and secured creditors, if any. Subsequently, the Trustee noticed his intention to abandon the estate's interest in the Carleton Avenue Property pursuant to 11 U.S.C. § 554, since he was unable to find a purchaser for the said property despite his own efforts and the efforts of his professionals to market same. The Court entered an Order authorizing the abandonment of the Carleton Avenue Property on May 14, 1999. Additionally, the Trustee stated in his sale motion that he intended to pursue other matters in the case which could result in a distribution to unsecured creditors.

In response to the Trustee's motion, the United States did not object to the Trustee's sale of the property or to its subordination as contemplated by 11 U.S.C. § 724(b). It did object, however, to any payment to the Trustee and the other proposed distributees pursuant to § 724(b) on the basis that it was premature and that the Trustee was incorrect in arguing that post-petition interest was not accruing. The United States further objected to the Trustee being reimbursed out of proceeds from this sale for all insurance expense incurred by the Trustee on behalf of this and other property. Suffolk County objected to the sale, to the subordination of its tax claim, and to the argument against the accrual of post-petition interest because the Trustee had failed to treat the post-petition interest and the assessment of post-petition real property taxes as administrative expenses of the estate.

After a hearing, the Court entered an Order dated September 11, 1998, which authorized the Trustee to sell the Elder Road Property to the purchaser for $635,000 on an "as is" basis, free and clear of liens or claims, with all such liens or claims to attach to the proceeds of the sale, and permitted the Trustee to pay BFCU (the first mortgagee), and to reimburse himself for the expense incurred only for insuring the Elder Road Property. The purchase price is insufficient to pay all lien creditors. The sale of the property closed on September 18, 1998, and the Trustee paid $372,753.35 to BFCU to pay off the first mortgage lien and $1,123.50 to himself for the authorized insurance expense. The Trustee thereafter submitted "supplemental papers" to the Court, indicating that there remained in the Trustee's possession proceeds of the sale in the sum of $261,438.26. The Trustee then itemized a total sum of $62,846.85 in administrative claims relating to the Elder Road Property, consisting of $35,015.75 in Trustee commissions, $21,481.10 in attorney's fees and expenses, and $6,350 for Maltz's commission. The Trustee further indicated that there were other claims in the sum of $272,064.46 against the net proceeds of the sale, listing the claimants in what the Trustee believed was the order of priority among them. The Trustee did not at that time request a distribution out of the net proceeds of the sale to anyone except to himself, as Trustee, to Trustee's counsel, and Maltz.

Thereafter, at a hearing on November 10, 1998, the Trustee indicated that he wished the Court to authorize a distribution out of the net proceeds of the real property sale in the full amount of the $62,846.85 in administrative claims, which he had set forth in his supplemental papers and requested authorization to pay the second mortgagee and a secured judgment creditor the balance of the funds available. The Court authorized the Trustee to pay $199,236.08 to Beneficial (the second mortgagee), subject to disgorgement of a portion thereof in the event the Court determines that the amount distributed to Beneficial exceeds the amount it was entitled to receive. Consequently, there is presently approximately $62,202.18 [2] remaining from the proceeds of sale, which the Trustee maintains in an interest bearing account, and all of which is being requested as payment for the Trustee's commissions, his counsel fees and the commission sought by Maltz, with little or nothing left for any other claimant.

The Trustee indicated the precise manner in which he believed § 724(b) should apply to displace the various tax liens in favor of the administrative claims he has requested. According to the Trustee, after paying the first mortgagee at the closing of sale, the following liens attached to the sale proceeds in their order of priority in accordance with non-bankruptcy law, at least some of which may be entitled to interest at varying rates:

| Name of Lienholder | Amount of Lien |
|---|---|
| Suffolk County | |
| 1996/97 real estate tax claim (pre-petition) | $ 17,555.98 |
| 1997/98 real estate tax claim (post-petition) | 17,979.36 |
| Judgment lien of Yellow Book Co. L.P. | |
| (recorded 5/24/89) | 1,022.75 * |
| IRS Tax Warrants (recorded 9/15/95) | 20,546.21 |
| Mortgage lien of Beneficial Mortgage Corp. | |
| (recorded 12/11/95) | 199,236.08 |
| Judgment lien of Richard C. Wright | |
| (recorded 12/12/95) | 616.66 * |
| New York State Tax Warrants | |

2. This amount includes interest earned on the proceeds of sale through September 1998.

| | |
|---|---|
| (1) $57,895.54 (recorded 4/3/96) | |
| (2) 168.44 (recorded 4/4/96) | 58,063.98 * |
| Judgment lien of Jeffrey M. Osofs | |
| (recorded 5/14/96) | 2,963.98 [3] |
| Judgment lien of Triangle Products Corp. | |
| (recorded 8/8/96) | 1,968.82 [4] |
| Judgment lien of Robert W. Burke | |
| (recorded 8/9/96) | 1,936.72 * |

\* Does not include interest payable at the statutory rate from the date of rendering of the judgment and/or tax warrant to the date of payment.

Suffolk County disagreed with the Trustee's contention that the 1997/98 real property tax claim was merely a secured claim subject to subordination and argued that it was both secured and an administrative claim. Moreover, the County asserted that it was entitled to statutory interest at the rate of twelve (12%) percent per annum on its secured claim. No further evidence was presented to establish the appropriate rate of interest to which oversecured tax claimants, if any, were entitled. Consequently, the Court cannot at this time determine with certainty the total amount of all the tax liens filed against the property.

At the November 10, 1998 hearing, the Court advised the Trustee that the precise amount of the administrative claims against the net proceeds had never been determined, nor had the parties been given an opportunity to brief the issue of how to apply § 724(b) to the various tax claims. The Court suggested that the Trustee notice a hearing to fix the administrative claims deeming them to be an application for interim fees, and invited all parties to submit additional briefs on the issues presented, including the appropriate distribution pursuant to § 724(b). The Trustee noticed such hearing for December 14, 1998, indicating that it was a hearing to consider applications for interim awards of compensation and reimbursement of expenses to the Trustee and his duly retained professionals incurred in connection with the sale of the Elder Road Property. The application incorporated the request for administrative fees as of September 29, 1998 as follows:

(a) Trustee's commission in connection with the Elder Road
Property and its sale .................................... $35,015.75 [5]

(b) Fees of general counsel to Trustee for services rendered and
disbursements incurred in connection with the Elder Road
Property and its sale
Fees ................................................. $8,115.25
Disbursements ......................................... 522.94
Total ................................................. 8,638.19 [6]

3. This judgment lien totals $5,927.95 but has been reduced to $2,963.98 by stipulation approved by the Court.

4. This judgment lien totals $3,281.37 but has been reduced to $1,968.82 by stipulation approved by the Court.

5. The maximum fee allowed to a Trustee pursuant to 11 U.S.C. § 326.

6. Trustee's general counsel, Ackerman & Terry, later made minor adjustments to the amounts requested for fees and expenses, based on a review of the firm's hourly billing records, whereby the fee request was increased to $8,322.80 and the request for expenses increased by $98.97. Since the Court is not fixing fees and expenses at this time, for purposes of this decision the Court will use the original figures set forth in the notice of hearing.

(c) Fees of special counsel to Trustee for services rendered and
disbursements incurred in connection with the Elder Road
Property and its sale

Fees ............................................... $12,275.00
Disbursements ........................................... 667.91
Total ................................................ 12,942.91

(d) Fees of David R. Maltz & Co. as broker (representing a 1%
commission, as requested pursuant to the retention Order)....... 6,350.00

---

There has not yet been any value added to this estate by the Trustee, although there is such a possibility. The Trustee had indicated that he intends to liquidate the other estate assets, including the Carleton Avenue Property and a boat called "The Intoxicated," allegedly owned by Debtor's wife, but which the Trustee believes is actually property of the Debtor's estate. Although not listed on the Debtor's petition or schedules, the Trustee believes that the Debtor also owns and operates the gas station/body shop business located at the Carleton Avenue Property, which the Trustee may be able to sell for the benefit of the creditors of the estate.

On behalf of the estate, the Trustee has commenced an adversary proceeding against the Debtor (a) to recover as a preferential transfer $6,849.75 in bail monies returned to the Debtor after certain criminal charges against him were dismissed; (b) for a money judgment representing the fair market value of the Debtor's use and occupancy of the Elder Road Property from the Filing Date to the date of closing of the sale; (c) for a money judgment representing the fair market value for the Debtor's use and occupancy of the Carleton Avenue Property during the pendency of the Chapter 7 case; and (d) for turnover of the rents purportedly collected by the Debtor from third parties with respect to the Elder Road Property and the Carleton Avenue Property during the pendency of the Chapter 7 case. However, at this time, it is uncertain whether there will be any additional funds available to distribute to any party.

### DISCUSSION

The Trustee seeks to utilize the distribution scheme set forth in Section 724(b) of the Bankruptcy Code to pay the administrative claims in this Chapter 7 case ahead of the secured tax claims, since the proceeds of sale are insufficient to satisfy all valid liens held against the property. Essential then to a resolution of the issues before the Court is a determination of the administrative expenses chargeable to the debtor's estate. The determination of administrative expenses is governed by Section 503 of the Bankruptcy Code, which provides in pertinent part as follows:

§ 503. *Allowance of administrative expenses*

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1) (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title;

(2) compensation and reimbursement awarded under section 330(a) of this title.

11 U.S.C § 330(b). As discussed above, at this time, the only administrative expenses

being sought by the Trustee are his own Trustee commissions, the award of counsel fees to Ackerman & Terry, general counsel to the Trustee, and to Flower & Medalie, special counsel to the Trustee, and the commission of Maltz, all as of September 29, 1998.

This Court is authorized by Section 331 of the Bankruptcy Code to award interim compensation to a trustee or any professional person employed under Section 327 of the Bankruptcy Code. An interim fee award is not a final order and is subject to disgorgement. 11 U.S.C. § 330(a)(5). In addition, the Court must determine whether the 1997/98 real property taxes assessed against the Elder Road Property by Suffolk County are to be treated as an administrative expense of this estate in addition to being a secured claim of the County.

## I. Determination of Administrative Expenses

### A. Interim Award of Compensation and Reimbursement of Expenses

■ Since the award sought by the Trustee is governed by Section 330 of the Bankruptcy Code, the Court will first examine that statute, which provides in pertinent part as follows:

§ 330. Compensation of Officers

(a) (1) After notice to the parties in interest and the United States trustee and a hearing and subject to sections 326, 328 and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual necessary services rendered by the trustee, examiner, professional person or attorney and by any para-professional person employed by any such person; and

(B) reimbursement for actual and necessary expenses.

(2) The Court may, on its own motion or on motion of the United States trustee or any other party in inter-

est, award compensation that is less than the amount of the compensation that is requested.

11 U.S.C. § 330(a). The Court has considered the appropriateness of awarding interim fees and commissions at this time, as requested by the Trustee. The Trustee's application seeks an award of compensation and reimbursement of expenses through September 29, 1998, which date appears to be arbitrary for purposes of Section 724(b) of the Bankruptcy Code. That is to say, if the Court were to award interim fees in this case at this time, it would not resolve the right to payment pursuant to Section 724(b)(2), since a determination of all allowed administration expenses entitled to priority is necessary before one can determine the distribution to be made pursuant to that statute. See *In re Dowco Petroleum, Inc.*, 137 B.R. 207, 211 (Bankr.E.D.Tex.1992) (nothing in the Bankruptcy Code or case law limits the trustee's use of Section 724(b) to the payment of administrative expenses incurred only in the actual sale of the property encumbered by the tax lien). Further, it is necessary to determine whether real property taxes incurred post-petition on the property sold are entitled to payment from the proceeds as administrative lien claims. The Trustee has not cited any authority for his assertion that a Section 724(b) distribution scheme should be applied piecemeal to only one asset of an estate. Moreover, the Court is unable at this juncture to ascertain whether there are additional assets that will add value to the estate. Therefore, although the Court could exercise its discretion and fix the amount of interim fees, because of many uncertain facts, the request for the interim payment of fees is premature and is denied at this time, without prejudice to be raised at a later date, preferably at a final meeting of creditors.

### B. Classification of Post–Petition Real Property Taxes Assessed by Suffolk County

One of the issues presented in this case is the resolution of whether the 1997/98

real property taxes assessed to the Elder Road Property constitute a secured tax lien subject to displacement under Section 724(b) or whether they constitute a secured claim which is also an administrative expense allowed under Section 503(b), which should be paid *pari passu* with other administrative claims prior to distribution by the Trustee pursuant to Section 724(b)(2).

Suffolk County contends that the Trustee's analysis for distribution of the proceeds of sale of the Elder Road Property improperly subordinates the County's claim for post-petition real estate taxes and the interest thereon. The Trustee contends that the enactment in 1994 of 11 U.S.C. § 362(b)(18) prevents post-petition real property taxes from becoming an administrative claim because such post-petition real property taxes automatically become secured tax claims on the day they are perfected and, therefore, do not qualify for priority treatment under 11 U.S.C. § 507(a)(1). Upon canvassing the cases that were decided after the enactment of Section 362(b)(18) in 1994, the Court notes that there is a split of authority on whether a post-petition real property tax which has become a lien against the real property and, thus, a secured claim against the bankruptcy estate, can be treated as an administrative claim entitled to priority pursuant to 11 U.S.C. § 507(a). *Compare In re R.H. Macy & Co., Inc.*, 176 B.R. 315 (S.D.N.Y.1994) (mere fact that New York City's claim against debtor's estate for post-petition property taxes, water and sewer charges was secured by lien in subject property did not preclude city's claim from qualifying for administrative expense priority) *and In re Marfin Ready Mix Corp.*, 220 B.R. 148 (Bankr.E.D.N.Y.1998) (taxes which accrued post-petition constitute an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(B)(i)) *with In re Sylvia Development Corp.*, 178 B.R. 96 (Bankr.D.Md.1995) (county was not entitled to payment of post-petition real property taxes as administrative expense of chapter 11 estate because perfection by

operation of law of tax lien made county secured creditor) *and In re Owens*, 208 B.R. 750 (Bankr.S.D.Ga.1996) (chapter 7 trustee could subordinate perfected post-petition tax liens, after sale of debtor's property free and clear of liens, in manner similar to pre-petition tax liens).

■ The County maintains that the 1997/98 real property taxes in the amount of $17,939.36 should be paid by the Trustee as a Section 507(a)(1) priority administrative claim before payment to any other lienholders. In addition, the County asserts that it should receive priority treatment for interest on the unpaid amounts, as provided by the Suffolk County Tax Act. The United States supports the County's position, claiming that the 1997/98 real property taxes are a secured priority administrative expense in the nature of a super-priority lien for taxes which runs with the land. *In re Navis Realty, Inc.*, 193 B.R. 998, 1005 (Bankr.E.D.N.Y.1996). The Trustee contends that the 1997/98 real property taxes cannot be an administrative claim entitled to priority pursuant to Section 507(a)(1) because they constitute a lien against the property and must be treated as a secured claim subject to subordination pursuant to Section 724(b). After consideration of this issue, the Court finds that the 1994 Bankruptcy Code Amendments did not change the fact that a post-petition real estate tax on property used by the estate is an "actual, necessary cost … of preserving the estate" and hence an administrative expense pursuant to 11 U.S.C. § 503(b). *In re Gifaldi*, 207 B.R. 54 (Bankr.W.D.N.Y.1997) (real property taxes represent a reasonable and necessary expense of preserving the property which are chargeable to the mortgagee under section 506(c)). The Court notes that a taxing authority's claim for post-petition real property taxes on real property that comes into the estate as of the filing of the petition, but which is not either used, sold or leased, is not entitled to an administrative expense claim pursuant to Section 503(b) as against other property of the

estate, but, rather, the taxing authority retains its lien and may have rights chargeable to the mortgagee pursuant to Section 506(c).

In this case, the Trustee has taken control of the Elder Road Property and sold it on behalf of the estate, and, therefore, the County's claim for the 1997/98 real property taxes is a claim against the proceeds of sale and entitled to administrative expense status. Additionally, as a Section 503(b) administrative expense, a secured post-petition real estate tax is entitled to priority treatment under 11 U.S.C. § 507(a)(1). *See In re R.H. Macy & Co., Inc.,* 176 B.R. 315 (S.D.N.Y.1994); 4 Collier on Bankruptcy, ¶ 503.07 (15th Ed. Revised 1999) (§ 503(b)(1)(B) provides that all taxes "incurred by the estate" are administrative expenses entitled to first priority under § 507(a)(1), excepting only the kind of taxes specified as eighth-priority claims under § 507(a)(8), which are to be treated under that provision and are denied administrative priority under § 503(b)(1)(B) even if "incurred by the estate").

In *R.H. Macy,* the District Court was presented with the identical issue in a Chapter 11 case as is presented here; i.e., do real property taxes and related charges that became due and payable post-petition, by virtue of being secured, still qualify as an expense of administration pursuant to Section 503. The District Court noted that the allowance of administrative expenses is governed by 11 U.S.C. § 503. Section 503(b) provides that an administrative expense shall be allowed for any tax incurred by the estate except for a tax of a kind specified in 11 U.S.C. § 507(a)(8)(B); i.e., a property tax that is assessed before the commencement of the case and last payable without penalty after one year before the date of filing of the petition. The lower court had decided that secured real property taxes do not qualify as administration expenses. The District Court reversed, stating as follows:

> Taken in conjunction, the plain meaning of [§§ 503(b) and 507(a)(8)(B)] is

that taxes incurred by an estate are entitled to administrative expense treatment, unless they are unsecured property taxes assessed before the commencement of the case. In other words, secured property taxes qualify as administrative expenses. One consequence of such characterization is that § 507(a)(1) specifies that administrative expenses receive first priority in distribution.

\* \* \* \* \* \*

[T]he Bankruptcy Court performed an identical analysis of §§ 503 and 507, applying the two-prong test described in *In re OPM Leasing Servs., Inc.,* 68 B.R. 979, 982 (Bankr.S.D.N.Y.1987). The first prong requires that the tax be incurred by the estate, and the second requires that the tax must not be specified in [§ 507(a)(8)]. The Bankruptcy Court found ... that the tax was clearly incurred by Macy's estates.

In analyzing the second prong of the test, the Bankruptcy Court considered the question of whether the City's tax claim was secured or unsecured.... The Bankruptcy Court found that the city had a statutory lien on the affected real estate, pursuant to New York City Charter § 1519(2) and 22 U.S.C. § 101(53) (1993), and that the perfection of the lien, during the post-petition period, was not in violation of the Automatic Stay. The Bankruptcy Court concluded that the city's claim was a secured one.

While this would appear to resolve the statutory analysis in the City's favor, the Bankruptcy Court ... observed that: 'Even a cursory analysis of the entire Section 503 leaves no doubt that all claims recognized under this section are unsecured claims incurred by the estate after commencement of a case. There is no evidence to assume that Congress ever intended to include secured claims within the scope of Section 503.'

This Court finds no binding authority supporting Macy's position that all

claims under § 503 must be unsecured. The statutory language and the accompanying 'Revision Notes and Legislative Reports' do not suggest any such limitation. Furthermore, § 507, which assigns priorities of distribution to eight classes of claims, prefaces its description of each class, except for administrative expenses, with the word 'unsecured.' Had Congress sought to create the limitation found by the Bankruptcy Court, it clearly knew how to do so.

*R.H. Macy,* 176 B.R. at 316–17 (citations omitted). *See also* 4 Collier on Bankruptcy, ¶ 503.07[2][b] (15th Ed. Revised 1999) (many property tax claims are secured by statutory liens, giving rise to the question of whether they must be treated as secured claims, administrative claims or both).

Under the analysis used in *R.H. Macy,* the Court must first decide whether the 1997/98 real property taxes are taxes "incurred by the estate," as provided in 11 U.S.C. § 503(b). First priority for tax claims extends only to post-petition taxes because, before the petition is filed, there is no estate. The significant event is the date the tax accrues and becomes a fixed obligation. *In re Bondi's Valu–King, Inc.,* 126 B.R. 47 (N.D.Ohio 1991) (tax is incurred for § 503(b)(1)(B) purposes when all the acts necessary to create the tax liability have occurred).

Taxation of real property in Suffolk County is governed by New York law; i.e., N.Y. Real Prop.Tax Law § 100 et seq., and the Suffolk County Tax Act. Specific provisions require that town assessors assess all real property located in their respective towns according to its condition and ownership as of the tax status date for each year—June 1 in Suffolk County; that they prepare thereafter an official assessment roll, listing all taxable property in the county; and that taxes computed from the assessment roll become due and payable on December 1 of each year, when they become a lien on the real property. *See Lincoln .Savings Bank FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n).* 880 F.2d 1540, 1542 (2d Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (*citing* Suffolk County Tax Act §§ 5 and 6). The taxpayer may then make payment without penalty until January 10; thereafter a one-time penalty of five (5%) percent is added to the tax amount, and interest begins to run on both the tax and the penalty at the rate of one (1%) percent per month, until either the full amount is paid or the land is sold by tax sale. *Parr Meadows,* 880 at 1542 (*citing* Suffolk County Tax Act § 13). Consequently, all of the formal processes for taxation of the Elder Road Property for the tax year 1997/98 occurred after the filing of the petition on May 7, 1997. Specifically, the process commenced on June 1, 1997, the tax status date, and continued through December 1, 1997, when the taxes became due and a lien on the property was perfected. Thus, the 1997/98 real property taxes were incurred by the Chapter 7 estate. Because the unpaid post-petition property taxes became a lien against the property on December 1, 1997 by operation of law, and the perfection of such lien does not violate the automatic stay, 11 U.S.C. § 362(b)(18), the County's claim is a secured claim. There is no indication that Congress intended to exclude secured claims from becoming administration expenses pursuant to 11 U.S.C. § 503(b). Moreover, the 1997/98 real property taxes are not taxes of a kind specified as eighth-priority claims under 11 U.S.C. § 507(a)(8), which are specifically denied administrative priority under 11 U.S.C. § 503(b)(1)(B), because these property taxes were not assessed before the commencement of the case. Hence the 1997/98 real property taxes are an administrative claim entitled to first priority treatment under 11 U.S.C. § 507(a)(1).

■ Additionally, outside of bankruptcy, owners and mortgagees alike expect property taxes to be a first lien against property. *See, e.g., In re Boston Harbor Marina Co.,* 157 B.R. 726, 734

(Bankr.D.Mass.1993), *citing Maryland Nat'l Bank v. Mayor and City Council of Baltimore (Matter of Maryland Glass Corp.)*, 723 F.2d 1138 (4th Cir.1983). N.Y. Real Prop. Acts. § 1354 (McKinney 1999); *Dunkirk Trust Co. v. Dunkirk Laundry Co.*, 17 Misc.2d 298, 182 N.Y.S.2d 381 (1959) (local tax lien in favor of city was entitled to priority over liens of mortgagee in mortgage foreclosure action). In light of this, Suffolk County's lien for unpaid real property taxes for the tax year 1997/98 is senior to the lien of the first mortgagee and senior to the lien for unpaid 1996/97 real property taxes, as well. *Tolfree v. Connolly*, 188 Misc. 689, 65 N.Y.S.2d 57 (1946), *affirmed*, 271 A.D. 1033, 69 N.Y.S.2d 923 (2d Dep't.1947), *appeal denied*, 272 A.D. 824, 72 N.Y.S.2d 269 (2d Dep't, 1947) (as between different tax liens, the last tax levy by Suffolk county is superior to lien of all other taxes). Thus, the 1997/98 real property taxes constitute an oversecured tax claim and the County is entitled to interest thereon at the statutory rate of twelve (12%) percent per annum. Suffolk County Tax Act § 15–c. The Trustee acknowledges that post-petition interest is authorized to the extent that a secured claim is oversecured under 11 U.S.C. § 506(b), even to nonconsensual secured creditors, under *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (Trustee's Memo in Further Support, n. 9, at 18). *See also In re Patco Photo Corp.*, 82 B.R. 192 (Bankr.E.D.N.Y.1988) (interest on post-petition taxes are afforded priority status as administrative expenses along with the underlying tax debt); *In re Iannolo*, 226 B.R. 528 (Bankr.N.D.N.Y. 1998) (interest on post-petition taxes incurred by debtor is to be paid as administrative expense).

This Court agrees with the reasoning and analysis of the District Court in *R.H.*

*Macy*, and finds that the County's claim for real property taxes is both secured and administrative in regard to any distribution from the sale proceeds of the Elder Road Property. This conclusion would not apply to post-petition real property taxes applicable to real property of the estate which is not administered by the Trustee.

The Court notes that some courts have also relied on 28 U.S.C. § 959(b) [7] in treating post-petition taxes as administrative expenses entitled to priority in Chapter 11 cases. *See, e.g., Borock v. City of New York*, 268 F.2d 412 (2d Cir.1959) (real estate taxes accruing during period of receivership instituted for enforcing federal tax lien were to be paid as current operating expenses); *In re Gifaldi*, 207 B.R. 54 (Bankr.W.D.N.Y.1997) (post-petition real property taxes are proper expense of administration). However, there is a split among courts as to whether 28 U.S.C. § 959(b) applies in liquidation cases or only in cases where the court appointed officer is actually operating the business or property. *Compare In re Valley Steel Products Co.*, 157 B.R. 442 (Bankr. E.D.Mo.1993) (28 U.S.C. § 959(b) does not apply to a debtor that is liquidating its estate) *and In re Scott Housing Sys.*, 91 B.R. 190 (Bankr.S.D.Ga.1988) (28 U.S.C. § 959(b) does not apply when a trustee or debtor in possession is liquidating the estate) *with Wall Tube & Metal Prods. Co.*, 831 F.2d 118 (6th Cir.1987) (chapter 7 liquidating trustee was required to comply with state's hazardous waste statute and response costs incurred by State of Tennessee was administrative expense of the estate). Since the parties have not raised or briefed this issue and having determined that the County's claim is entitled to administrative expense status on other grounds, the Court need not and does not determine the applicability of 28 U.S.C.

---

**7.** Title 28, section 959(b) of the United States Code obligates a trustee, receiver or manager appointed by a federal court, including a debtor-in-possession, to manage and operate the property in his possession according to the requirements of the valid laws of the State in which the property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

§ 959(b). Since the Court has determined that the 1997/98 real property taxes as against the property sold are administrative expenses of the Debtor's estate, only the 1996/97 real property taxes are subject to displacement under the distribution scheme set forth in 11 U.S.C. § 724(b).

## II. Subordination of Tax Liens to Administrative Claims Pursuant to § 724(b)

Section 724 of the Bankruptcy Code provides as follows:

§ 724. Treatment of certain liens

(a) The trustee may avoid a lien that secures a claim of a kind specified in Section 726(a)(4) of this title.

(b) Property in which the estate has an interest and that is subject to a lien that is subject to lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

 (1) first to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

 (2) second, to any holder of a claim of a kind specified in section 507(a)(1) [through] (a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

 (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

 (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

 (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

 (6) sixth, to the estate.

(c) If more than one holder of a claim is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such holders under such paragraph shall be in the same order as distribution to such holders would have been other than under this section.

(d) A statutory lien the priority of which is determined in the same manner as the priority of a tax lien under section 6323 of the Internal Revenue Code of 1986 shall be treated under subsection (b) of this section the same as if such lien were a tax lien.

11 U.S.C. § 724. In bankruptcy, a debtor's assets in the hands of the trustee are subject to all liens and encumbrances existing on the date of the bankruptcy filing (which are not otherwise invalidated). *United States v. Darnell (In re Darnell),* 834 F.2d 1263, 1265 (6th Cir.1987). Such liens are recognized as a charge upon the estate's assets. However, Section 724(b) provides a mechanism through which the estate can, if necessary recover certain enumerated categories of administrative expenses from the proceeds of the sale of property which are subject to a tax lien. *Darnell,* 834 at 1265. *In re Dowco Petroleum, Inc.,* 137 B.R. 207 (Bankr.E.D.Tex. 1992); *In re Packard Properties, Ltd.,* 112 B.R. 154, 156 (Bankr.N.D.Tex.1990).

As a matter of public policy, Congress has subordinated the right of statutory lien creditors to the expense of administration. Section 724(b) is intended to reimburse the estate for the costs of preserving and liquidating property. The subordination provisions of 11 U.S.C. § 724(b) apply to real property sales by a Chapter 7 trustee. *In re K.C. Machine & Tool Co.,* 816 F.2d 238 (6th Cir.1987); *In re Thurman,* 163 B.R. 95, 101 (Bankr. W.D.Tex.1994). There is, however, some doubt as to whether the tax lien claimants' portion of the sales proceeds can be used

to pay any administrative claim, or whether the administrative claimants should somehow be required to look to other estate property before looking to the proceeds subject to a properly perfected tax lien. *Compare In re Dowco Petroleum, Inc.,* 137 B.R. 207, 209 (Bankr.E.D.Tex. 1992) (Chapter 7 Trustee is required to exhaust all unencumbered funds of the estate in the payment of administrative expenses before resorting to the priming option of taxing administrative expenses against the proceeds encumbered by a taxing entity's lien) *and In re Granite Lumber Co.,* 63 B.R. 466, 473 (Bankr.D.Mont. 1986) (Section 724(b) should be implemented to pay administrative costs or other priority claims under Sections 507(a)(1)–(6) only when there are not other funds which are property of the estate; otherwise, secured tax lien claimants would in effect subsidize the creditors junior to the senior lien holders) *with In re Packard Properties, Ltd.,* 112 B.R. 154, 156 (Bankr. N.D.Tex.1990) (Section 724(b) designates a tax lien as a source of payment of administrative claims; thus, whenever property of the estate is burdened with a tax lien (local, state or federal), the amount of that lien can be used to pay administrative expenses) *and In re Darnell,* 834 F.2d 1263, 1265 (6th Cir.1987) (Section 724(b) sets forth an exception to the general rule that priority claimants do not affect perfected secured claims and noting that the effect is to allow the administrative claimants to step into the shoes of the tax collector, at least to the extent of the perfected lien claim).

Collier on Bankruptcy clearly favors the approach enunciated in *Dowco* and *Granite Lumber* to the approach taken in *Packard* and *Darnell,* stating:

> While § 724(b)(2) provides for a subordination of tax liens to priority claims, § 724(b)(5) gives back to the tax lien holder a "replacement lien" on the same property that is junior to existing liens. If Congress had intended that tax lien claimants were to bear the cost of administration of the Chapter 7 estate, it would not have permitted the tax lien claimant to recoup its losses from any excess equity in the property. It would have relegated the displaced tax lien to the status of an unsecured claim. Instead, the tax lien claimant was given the right to be paid ahead of general unsecured creditors and other § 507(a)(8) priority claimants out of any equity in the property. *Accordingly, § 724(b) should be invoked only when necessary for payment of administrative and priority claims.*

6 Collier on Bankruptcy, ¶ 724.03[3][b] (15th Ed. Revised 1997) (emphasis supplied). This Court elects to follow the rationale of *Dowco* and *Granite Lumber.*

### III. Proper Method for Applying Section 724(b) in Cases Involving Multiple Secured Tax Liens

In the event that the Court determines, based on the evidence before it at the time of the Final Meeting, that the claims of the holders of secured tax liens should be subordinated for the purpose of paying the estate's expenses of administration, then the Court finds that the provisions of Section 724(b) should be applied in the manner hereinafter described.

Although the Court cannot at this time approve the Trustee's motion for Section 724(b) subordination, the Court has had an opportunity to consider the parties' arguments on how the subsections of Section 724(b) should be applied under the facts of this case and subscribes to the methodology advocated by the United States. When Section 724(b) is applied properly, no senior or junior (non-tax) lienholders should be disturbed other than by operation of 11 U.S.C. § 506(a). *In re Navis Realty, Inc.,* 193 B.R. 998, 1004 (Bankr.E.D.N.Y.1996).

Additionally, Section 724 does not alter the established rule that in determining priorities between competing liens, federal courts look to non-bankruptcy law, *Pearlstein v. United States Small Business Admin.,* 719 F.2d 1169, 1175–76

(D.C.Cir.1983), in this case according to New York law, on a first in time, first in right basis. Therefore, the tax liens that have been secured last in time should be the first to be displaced, except for the 1997/98 real property tax lien which constitutes an administrative claim entitled ·to priority under 11 U.S.C. § 507(a)(1). Once the lien priorities have been established under non-bankruptcy law, the determined lien priority status of all claimants (tax and non-tax) should not be affected. *See, e.g., In re Bino's Inc.,* 182 B.R. 784 (Bankr. N.D.Ill.1995) (rights and claims of both senior and junior lienors and holders of non-priority unsecured claims are left undisturbed under Bankruptcy Code's tax lien subordination provision; only parties affected by operation of that provision are priority claimants and tax lien creditors). Hence, when there are several competing tax liens, as here, Section 724(b) should be applied so as to displace the tax lien with the lowest lien priority status first, and thereafter the tax claims would be displaced in ascending priority order. Consequently, the tax claim with the most senior lien priority status will be displaced last— if at all—otherwise the displacing of the liens would provide a windfall to less senior· tax claims. Although the reported cases do not utilize this methodology, the Court is of the opinion that this will have the desired effect of maintaining the lien priority established under New York State law, without affecting any rights provided by the Bankruptcy Code.

 Under the tax lien displacement formula set forth in 11 U.S.C. § 724(b), amounts distributable for administrative expenses may not exceed the value of all tax liens securing the net proceeds of sale, after applying 11 U.S.C. § 506(a). Thus, in the event that the allowed administrative expenses are not fully paid from liquidation of the unencumbered assets of the Debtor's estate and the Court authorizes a distribution of the net proceeds of sale of the Elder Road Property under Section 724(b), the allowed ad-

ministrative expenses remaining unpaid can be paid to the extent of the value of all tax liens filed against the property. If the allowed administrative expenses remaining unpaid are greater than the total amount of the tax liens, then first priority administrative expenses are to be paid before any of the second priority administrative expenses, etc. In the event there are insufficient funds to pay all first priority administrative expenses out of the fund created by the subordinated tax liens, then all first priority administrative claimants are to be paid *pro rata. See, e.g., In re Navis Realty, Inc.,* 193 B.R. 998, 1004 (Bankr. E.D.N.Y.1996) (when the aggregate amount of priority claims under 11 U.S.C. § 501(a)(1) –(a)(7) exceeds the amount of the tax lien, such claims would be paid on a pro-rata basis with the total payment on such claims equaling the amount of the tax lien).

### A. Determination Under § 506(a) of Secured Status of All Liens Encumbering Net Proceeds of Sale is Prerequisite to Application of § 724(b)

 Before applying the secured tax lien displacement provision of 11 U.S.C. § 724(b) to the net proceeds from the sale of the Elder Road Property, the Court must determine pursuant to 11 U.S.C. § 506(a) those creditors who are secured with respect to the value of the property available for distribution. Section 506(a) states that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." In this case, the Trustee and the United States do not appear to agree on the date of valuation. The Trustee's approach does not even recognize Section 506(a), and it values the creditors' liens as of December 31, 1998. The proper valuation date for

purposes of Section 506(a) bifurcation is the date of distribution. 11 U.S.C. § 506(a).[8]

The following table calculates the extent of the secured and unsecured portions of the secured claims filed against the debtor's Elder Road Property, assuming that the net proceeds available for distribution are $635,315.11. Of course, this amount should be adjusted to include interest subsequently earned on the sale proceeds.

### Determination of Secured and Unsecured Portion of Claims

### § 506(a) Birfurcation

| | Total | Unsecured | Secured |
|---|---|---|---|
| 1996/97 Suffolk County | $ 17,555.98 | | $ 17,555.98 [9] |
| 1st Mortgagee (BFCU) | 372,753.35 | | 372,753.35 |
| Yellow Book (1st judgment lien) | 1,022.75 | | 1,022.75 |
| IRS Tax Warrants | 20,546.21 | | 20,546.21 |
| 2nd Mortgagee (Beneficial) | 199,236.08 | | 199,236.08 |
| Richard Wright (2nd judgment lien) | 616.66 | | 616.66 |
| NYS Income tax warrants | 58,063.98 | 34,479.90 | 23,584.08 |
| Jeffrey Osofs (3rd judgment lien) | 2,964.00 | 2,964.00 | |
| Triangle Building Prod. (4th judgment lien) | 1,969.00 | 1,969.00 | |
| Robert Burke (5th judgment lien) | 1,937.00 | 1,937.00 | |
| TOTAL | $676,828.27 | $41,513.16 | $635,315.11 |

As illustrated above, the entire amount of all liens subordinate to the New York State tax warrant claims are reclassified as unsecured claims for purposes of Section 724(b), since a creditor is secured only to the extent of the value of the underlying property, and unsecured to the extent the value of the claim exceeds the value of the underlying property. It should be noted that some of the lien creditors will be entitled to interest on their claims through the date of distribution and the figures should be adjusted accordingly. *See, e.g., United States v. Ron Pair Enters.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

### B. Illustration of Application of § 724(b)

Once the Section 506(a) secured status is determined, the secured tax lien displacement formula set forth in Section 724(b) (the "Lien Displacement Formula") may be applied to determine the exact displacement of each secured tax lien. In cases such as this, where there are multiple tax liens with different levels of priority, the tax liens must be displaced in reverse or-

**8.** Section 506(a) provides that a determination (or bifurcation) of secured and unsecured status must be made "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). In this case, the purpose of valuation is to determine how, if at all, secured tax liens will be displaced under the displacement formula set forth in Section 724(b). The property available for distribution are the net proceeds of sale. Thus, the appropriate valuation date is the date on which the proceeds are to be distributed un-

der Section 724(b). This will ensure that interest earned on proceeds subject to all lienholders' rights will not be used for the benefit of unsecured creditors (including priority claims) while secured creditors are not compensated for delay even though their liens accrue interest.

**9.** The pre-petition claim of Suffolk County for delinquent real estate taxes, holds a superpriority status and is otherwise senior to the mortgage debt. As such the priority for this liability is an exception to the first in time, first in right rule.

der of the actual lien seniority status, determined under non-bankruptcy law.

Subject to a final determination of all allowed administrative claims and all assets available for distribution, the following illustration shows the operation of the Lien Displacement Formula, insofar as it displaces the lowest priority tax lien; i.e. New York State lien for pre-petition unpaid income taxes, to the extent that it is a secured claim. For purposes of the illustration, the displacement of the secured New York State tax claim will be referred to as the "first pass" under the Lien Displacement Formula; that is to say, the illustration below demonstrates the application of 11 U.S.C. §§ 724(b)(1), 724(b)(2) and 724(b)(3) so as to displace the New York secured tax claim. A "second pass" would then be necessary to displace the

second lowest priority tax claim (the IRS lien), after which a "third pass" would be utilized to displace the most senior tax claim (the Suffolk County lien for pre-petition real property taxes).

For the "first pass," we will assume a total fund available for distribution of $635,315.11 (proceeds of sale + interest accrued from date of closing); lien claims in the amount of $611,731.03 which are senior in priority to the New York State tax lien; and total allowed administrative expenses of $80,826.21. The "first pass" results in (i) the displacement of the secured portion of the New York State tax claim ($21,483.82); and (ii) a reduction of administrative expenses to $59,342.39, after displacement of the New York State tax lien. The illustration shows the "first pass" made under the Section 724(b) lien displacement formula:

**First Pass: Displacement of lowest priority tax lien (N.Y.S: $23,584.08)** [10]

Total available for distribution: $635,315.11

§ 724(b)(1)—claims that are *senior* to the NYS tax lien, which is the lowest priority tax lien filed against the property:

| | |
|---|---|
| **Suffolk County real property tax claim** | 17,555.98 |
| 1 st Mortgagee (BFCU) | 372,753.35 |
| Yellow Book (1 st judgment lien) | 1,022.75 |
| **Internal Revenue Service** | 20,546.21 |
| 2 nd Mortgagee (Beneficial) | 199,236.08 |
| Richard Wright (2 nd judgment lien) | 616.66 |
| Total senior lien claims | (611,731.03) |

§ 724(b)(2)—Admin. Priority claims displacing $23,584.08 of NYS lien:

| | Total estimate Admin. Claim [11] | Amount Distributable [12] | Unpaid Balance |
|---|---|---|---|
| Trustee commissions/fees and out-of-pocket costs | 62,846.85 | | |
| 1997/98 post-petition real estate taxes | 17,979.36 | | |
| Net unpaid admin. claims | 80,826.21 | (23,584.08) | 57,242.13 |
| Residual for NYS as per § 724(b)(3) | | | 0.00 |

**10.** This figure is for purposes of example and will change depending upon interest earned on the proceeds (increasing the figure) and interest accrued on senior liens (decreasing the figure).

**11.** The Chapter 7 Trustee has claimed administrative expenses totaling $62,846.85, as previously indicated. In addition, included as an administrative expense are the 1997/98 real

property taxes incurred by the estate in the amount of $17,979.36, plus interest at the statutory rate of twelve (12%) per annum.

**12.** As used throughout this illustration, the term "Amount Distributable" is limited to the extent the estimated administrative expense claims are determined to be allowed by the Court.

As illustrated above, the New York State tax lien has been displaced to the extent it is a secured claim ($23,584.08) and used to pay $23,584.08 in allowed administrative expenses, leaving unpaid administrative expenses of $57,242.13 ($80,826.21 minus $23,584.08) and no replacement lien for New York State pursuant to 11 U.S.C. § 724(b)(3). In addition, after the "first pass," the liens of all the lienholders senior in priority to New York State are undisturbed.

The Lien Displacement Formula would then be applied a second time (the "second pass") to displace the second lowest priority lien; i.e., the IRS lien for pre-petition unpaid income taxes in the secured amount of $20,546.21.[13] During the second pass, (i) the lien claims senior in priority to the IRS tax lien, in the total amount of $391,332.08 [14] (Suffolk County pre-petition real property tax claim of $17,555.98 + BFCU first mortgage in the sum of $372,753.98 + first judgment lien of Yellow Book in the sum of $1,022.75), remain undisturbed pursuant to 11 U.S.C. § 724(b)(1); (ii) the IRS lien in the amount of $20,546.21 is displaced pursuant to 11 U.S.C. § 724(b)(2), thereby further reducing the balance of unpaid administrative expenses to $36,695.92; and (iii) the intervening lien claims subordinate in priority to the IRS lien and senior in priority to the displaced NYS tax lien, in the total amount of $199,852.74 [15] (Beneficial second mortgage in the sum of $199,236.08 + second judgment lien of Richard Wright in the sum of $616.66), remain undisturbed pursuant to 11 U.S.C. § 724(b)(4). When the "second pass" is completed, there is no excess attributable to the IRS tax lien pursuant to 11 U.S.C. § 724(b)(3) and there would be no replacement lien for the IRS pursuant to 11 U.S.C. § 724(b)(5). The "second pass" is illustrated below.

**Second Pass: Displacement of second lowest priority tax lien (IRS: $20,546.21 + post-petition interest)**

Total available for distribution: $635,315.11

§ 724(b)(1)—claims that are *senior* to the IRS tax lien, which is the second lowest priority tax lien:

| | |
|---|---|
| Suffolk County real property tax claim | 17,555.98 |
| 1 st Mortgagee (BFCU) | 372,753.35 |
| Yellow Book (1st judgment lien) | 1,022.75 |
| Total senior lien claims | (391,332.08) |

§ 724(b)(2)—listed admin. priority claims displacing $20,546.21 IRS tax lien:

| | Total estimated and unpaid Admin. Claim | Amount Distributable | Unpaid Balance |
|---|---|---|---|
| 1997/98 real estate taxes and Trustee commissions/fees and out-of-pocket costs | 57,242.13 | (20,546.21) | 36,695.92 |
| Net available for distribution | | 223,436.82 | |

13. This figure is for purposes of example; in the event that the IRS lien is oversecured, post-petition interest will accrue to the date of distribution.

14. This figure is for purposes of example; it does not include post-petition interest payable to Suffolk County on account of 1996/97 real property taxes at the rate prescribed by Section 13–c of the Suffolk County Tax Act or statutory interest on the Yellow Book judgment.

15. This figure is for purposes of example; it does not include post-petition interest payable at the statutory rate on account of the judgment lien of Richard Wright.

§ 724(b)(3)—Excess second lowest tax lien not
fully depleted under § 724(b)(2)　　　　0.00

§ 724(b)(4)—Junior lien claims:

| | |
|---|---|
| 2 nd Mortgagee (Beneficial) | 199,236.08 |
| Richard Wright (2 nd judgment lien) | 616.66 |
| **Already displaced NYS tax lien** | 23,584.08 |
| Total | (223,436.82) |

Residual to IRS as per § 724(b)(5)　　　　0.00

---

The Lien Displacement Formula would then be applied a third time (the "third pass") to displace the senior priority lien; i.e., the Suffolk County lien for pre-petition real property taxes in the amount of $17,555.98.[16] During the third pass, (i) there are no lien claims senior in priority to the Suffolk County pre-petition real property tax claim of $17,555.98, for purposes of applying 11 U.S.C. § 724(b)(1); (ii) the Suffolk County tax lien, in the total amount of $17,555.98 is displaced pursuant to 11 U.S.C. § 724(b)(2), thereby further reducing the balance of unpaid administrative expenses to $19,139.94[17]; and (iii) the intervening lien claims subordinate in priority to the Suffolk County tax lien for pre-petition real estate taxes and senior in priority to the NYS secured tax claim, in the total amount of $199,852.74[18] (Beneficial second mortgage in the sum of $199,236.08 + second judgment lien of Richard Wright in the sum of $616.66), remain undisturbed pursuant to 11 U.S.C. § 724(b)(4). When the "third pass" is completed, there is no excess attributable to the Suffolk County pre-petition tax lien pursuant to 11 U.S.C. § 724(b)(3) and there would be no replacement lien for Suffolk County pursuant to 11 U.S.C. § 724(b)(5). The "third pass" is illustrated below.

**Third Pass: Displacement of senior tax lien Suffolk County: $17,555.98 + postpetition interest (less avoidable penalties)**

Total available for distribution:　　　　$635,315.11

§ 724(b)(1) amounts:

Claims that are *senior* to the Suffolk
County lien for pre-petition taxes　　　　0.00

Total senior tax claims　　　　0.00

**16.** This figure is for purposes of example; it does not include post-petition interest payable to Suffolk County on account of 1996/97 real property taxes.

**17.** For purposes of the illustration, since the displacement of the secured portion of all tax claims ($61,686.27) does not pay in full all administrative expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) ($80,826.21), the first priority administrative claimants would receive a *pro rata* distribution, and there would be no distribution to any other priority administrative claimants. *See In re Navis Realty, Inc.*, 193 B.R. 998, 1004 (Bankr.E.D.N.Y.1996).

**18.** This figure is for purposes of example; it does not include post-petition interest payable at the statutory rate on account of the judgment lien of Richard Wright.

§ 724(b)(2)—listed admin. priority claims displacing $17,555.98 Suffolk County lien:

| | Total estimated and unpaid Admin. Claim | Amount Distributable | Balance [19] |
|---|---|---|---|
| 1997/98 real estate taxes and Trustee commissions/fees and out-of-pocket costs | 36,695.92 | (17,555.98) | 19,139.94 |
| Net available for distribution | | 617,759.13 | |

§ 724(b)(3)—Excess highest lien not fully depleted under § 724(b)(2)

| | |
|---|---|
| Suffolk County | 0.00 |

§ 724(b)(4)—Junior lien claims

| | |
|---|---|
| 1 st Mortgagee (BFCU) | 372,753.35 |
| Yellow Book (1 st judgment lien) | 1,022.75 |
| **Already displaced IRS lien** | **20,546.21** |
| 2 nd Mortgagee (Beneficial) | 199,236.08 |
| Richard Wright (2 nd judgment lien) | 616.66 |
| **Already displaced NYS lien** | **23,584.08** |
| Total | (617,759.13) |
| Residual to Suffolk County as per § 724(b)(5) | 0.00 |

---

Summarizing the above application of Section 724, the entire amount of each non-tax secured claim (see "§ 506(a) Secured Status Determination" at Part IIIA above) is distributable to the respective lienholder (subject only to the claims of Section 506(c) claimants). In addition, Suffolk County will be entitled to the 1997/98 real property taxes, which were incurred by the estate post-petition, together with accrued interest to the date of distribution, as an allowed administrative expense entitled to first priority under 11 U.S.C. § 507(a)(1). Thus, it is possible that, upon approval of the Trustee's Final Report and Account, Suffolk County's distribution on account of the 1997/98 real property taxes will be pro rated, as one of several administrative expense entitled to priority under 11 U.S.C. § 507(a)(1). Finally, upon approval of the Trustee's Final Report and Account, the Chapter 7 Trust-ee will be entitled to the allowed amount of his administrative expenses to the extent that all of the allowed administrative expenses do not exceed the total amount of the displaceable tax liens. To the extent that all allowed first priority administrative expenses are greater than the amount of the secured tax liens, the Trustee's allowed administrative expenses will be pro rated.

### CONCLUSION

1. The matter is before the Court pursuant to 11 U.S.C. §§ 363(b) and (f) and 724 and Fed.R.Bankr.P. 6004.

2. Jurisdiction is conferred by 28 U.S.C. § 1334, and the proceeding is "core" pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0).

3. At this time, the estate is administratively insolvent and too many facts re-

19. As discussed earlier, no further passes are necessary inasmuch as all listed priority claims are distributable at this point.

main to be fixed in order to approve a distribution to administrative creditors pursuant to 11 U.S.C. § 724(b). Therefore, the Trustee's request for interim fees pursuant to 11 U.S.C. § 331 is premature and denied without prejudice to be heard and determined at a later date.

4. The Trustee's motion to distribute the net proceeds of sale pursuant to 11 U.S.C. § 724(b) is denied without prejudice.

5. The post-petition real property taxes incurred by the estate with respect to the Elder Road Property, which were perfected during the pendency of this case by operation of 11 U.S.C. § 362(b)(18), constitute a secured claim against the estate and also an administrative expense entitled to priority pursuant to 11 U.S.C. § 507(a)(1) in the distribution of the proceeds of sale, since the property sold was actually administered by the Trustee. As the holder of an oversecured claim, the County is also entitled to interest at the statutory rate of 12% per annum pursuant to 11 U.S.C. § 506(b).

6. To promote State real property lien priorities, in cases involving multiple secured tax liens, 11 U.S.C. § 724 should be applied so as to displace the tax lien with the lowest lien priority first; thereafter the tax claims are displaced in ascending priority order. Part III of this decision sets forth the proper method for applying 11 U.S.C. § 724 in cases involving multiple secured tax liens with different levels of priority.

Within ten (10) days, the Trustee shall settle an order consistent with the foregoing decision.